J-S17012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALONZO WALLACE, | |
| Appellant | No. 1116 EDA 2016 |

Appeal from the Judgment of Sentence of February 17, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008101-2014

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 17, 2017**

Appellant, Alonzo Wallace, appeals from the judgment of sentence entered on February 17, 2016, following his jury trial convictions for two counts of aggravated assault, burglary, robbery, conspiracy to commit robbery, and carrying a firearm without a license.[1]  In this direct appeal, Appellant's court-appointed counsel filed both a petition to withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel complied with the procedural requirements necessary for withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.

---

[1] 18 Pa.C.S.A. §§ 2702, 3502, 3701, 903, and 6106, respectively.

We therefore grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Because counsel filed a statement of his intent to file an *Anders* brief pursuant Pa.R.A.P. 1925(c)(4), the trial court did not prepare an opinion pursuant to Pa.R.A.P. 1925(a). The trial court, however, did prepare a thorough and well-written opinion to this Court with respect to co-defendant, Quadir Jeffries, a case on direct appeal assigned to this same panel. Our disposition of Jeffries' appeal quoted at length the trial court's summary of the underlying facts of this case, as follows:

> In early January[] 2014, [R.M.] was working as a pizza delivery driver. At some point in early January 2014, [R.M.] was driving his vehicle when he noticed a woman, later identified as Kimberly Cook, walking down the street near 54th Street and Lansdown Avenue in Philadelphia. [R.M.] honked his horn at Cook and pulled over his vehicle to talk with her, hoping to exchange phone numbers and meet with her later. At this time, Cook identified herself as "Zah."[fn.1] While [R.M.] and Cook were talking and exchanging phone numbers, Cook noticed that [R.M.] had an amount of [United States] currency on the passenger side floor of his vehicle.
>
> [fn.1] Cook was also identified as "Zamirah Johnson."
>
> After meeting [R.M.], Cook told her boyfriend, co-defendant Hakim Blatch, about the meeting and asked Blatch to rob [R.M.]. Blatch agreed and arranged to have co-defendants Quadir Jeffries and [Appellant] aid in the robbery. The plan was for Cook to accompany [R.M.] to his house, while Blatch, [Appellant], and Jeffries followed in a separate car. Cook would then open the door for Blatch, [Appellant], and Jeffries to enter and rob [R.M.].
>
> On January 18, 2014, Cook called [R.M.] under the false pretense of meeting [R.M.] to have sex. Cook arranged to

- 2 -

have [R.M.] pick her up near 56th Street and Lansdown Avenue later that evening. Cook, Blatch, [Appellant], and Jeffries then headed to 56th Street and Lansdown Avenue in Jeffries' car. Also with them was Cook's friend, Crystal Collins. Cook wished to have Collins present with her, as Cook did not know [R.M.] and was nervous about meeting him alone. Blatch, Jeffries, and [Appellant] waited in Jeffries' car around the corner from where [R.M.] was waiting while Cook and Collins exited the vehicle and met with [R.M.].

[R.M.] arrived at the corner of 56th Street and Lansdown Ave[nue] and waited for approximately 45 minutes before Cook arrived, accompanied by Collins. [R.M.] had both women get into his car and drove to his apartment on the 4200 block of North 7th Street in Philadelphia. While [R.M.] was driving, Cook was texting Blatch, providing directions as to where [R.M.] was driving and the address at which they stopped.

Upon arriving at [R.M.'s] apartment, [R.M.], Cook, and Collins went inside and had a conversation about sex. While they were talking, Blatch, Jeffries, and [Appellant] arrived at [R.M.'s] apartment, finding the outside door locked, and Blatch texted Cook to tell her to open the door. At this time, Cook asked if she could go outside to smoke a cigarette, and [R.M.] gave her the keys to his car, telling her that he had a lighter inside of it. Cook then went downstairs and opened the door for Jeffries and [Appellant] to enter the building and directed them to [R.M.'s] bedroom. Jeffries and [Appellant] entered the building and went upstairs while Cook went to the street corner, throwing away [R.M.'s] keys, where she was later joined by Collins. As Collins left the building, Blatch entered.

After letting Cook out of the apartment and watching her go down the steps, [R.M.] closed his door, only to reopen it and see men rushing up the steps. [R.M.] attempted to close his door, but Jeffries and [Appellant] kicked the door in, forcing [R.M.] to the ground. While [R.M.] was on the ground, Jeffries and [Appellant] pistol whipped him with handguns while demanding that [R.M.] tell them where the money was, and threatening to shoot him. Blatch joined Jeffries and [Appellant] while they were beating [R.M.]. The

assailants rummaged through [R.M.'s] room looking for cash, and found a cookie tin with marijuana and cash. They failed to find the large sum of cash that was in [R.M.'s] pocket.

[M.S.], who lived in the apartment across from [R.M.], heard the commotion and opened his door to see what was happening. [M.S.] saw two men standing in [R.M.'s] broken doorway. [Appellant], noticing [M.S.] open the door, turned towards [M.S.] and shot at him. Closing the door as [Appellant] turned, [M.S.] ducked and was shot through the door, with the bullet striking his left arm. Had [M.S.] not ducked, the bullet would have struck [M.S.] in his heart. As the three robbers left the apartment building, Jeffries fired a shot at a security camera inside the front door.

Hearing the assailants leave, [R.M.] checked on [M.S.] while [M.S.] called the police. Police responded and were let into the house by [R.M.]. [M.S.] and [R.M.] were transported to Temple University Hospital for medical treatment.

Police recovered one [nine-millimeter] fired cartridge case and one [40 caliber] fired cartridge case from the first floor hallway of the home. Police also recovered the video tapes of the home surveillance system that covered the front entryway into the building. The inside camera appeared to be damaged by a gunshot. After his release from the hospital, [M.S.] found the [40 caliber] bullet that had struck him in his room and gave that bullet to the landlord, who turned it over to police.

Later [on the night of the shooting], Blatch, Cook, Collins, [Appellant], and Jeffries all met at a speakeasy on Jackson and Taney Streets. While the group was together, they discussed [Appellant] shooting [M.S.] and Jeffries shooting out the camera. At this time, Blatch stated that [Appellant] and Jeffries had already pistol-whipped [R.M.] by the time Blatch got upstairs. Jeffries gave Collins some money at the speakeasy while Blatch gave Cook some marijuana.

Police provided the media with a copy of the surveillance video, in an effort to get public help in identifying the robbers. Deputy Sheriff Martin Samuels, who knew both Blatch and Jeffries from his time patrolling the area,

watched the video of the assault and identified Blatch and Jeffries as two of the perpetrators. Police also conducted an analysis of the phone [R.M.] had used to contact Cook, and from that, were able to identify Cook as a suspect in the case. Police put Cook's photo in a photo array and showed it to [R.M.], who identified Cook as the person he stopped on the street and who set him up for the robbery.

Jeffries was arrested on February 23, 2014. Police made several efforts to locate Blatch and Cook in February and March 2014, but were unable to locate them. Blatch and Cook were arrested on June 4, 2014. [Appellant] was arrested on June 11, 2014. After her arrest, Cook provided a statement to police, detailing her involvement in the robbery. Cook also identified Blatch, [Appellant], and Jeffries to police. A cell phone tower analysis of the location of Blatch's cell phone on the night of the robbery corroborated Cook's statement to the police regarding the events surrounding the robbery.

*Commonwealth v. Jeffries*, 880 & 1111 EDA 2016, at 2-5 (internal citations and some internal footnotes omitted).

The Commonwealth charged Appellant with the aforementioned crimes, as well as attempted murder. On December 10, 2015, a jury found Appellant not guilty of attempted murder, but convicted him of the remaining offenses. On February 17, 2016, the trial court sentenced Appellant to an aggregate term of 30 to 60 years of imprisonment. More specifically, pursuant to 42 Pa.C.S.A. § 9714,[2] the trial court sentenced

---

[2] "Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a [mandatory] minimum sentence of at least ten years of total confinement." 42 Pa.C.S.A. § 9714.

Appellant to mandatory, consecutive sentences of 10-20 years for each of the aggravated assault convictions and the robbery conviction. The trial court also imposed concurrent sentences of imprisonment of five to 10 years for burglary, three to six years for conspiracy, and three-and-one-half to seven years for carrying a firearm without a license. Appellant filed a timely post-sentence motion for reconsideration. On April 4, 2016, the trial court denied relief. This timely appeal resulted.[3]

Before we begin our substantive analysis, we must first review counsel's **Anders** brief and motion to withdraw. **Commonwealth v. Bennett**, 124 A.3d 327, 330 (Pa. Super. 2015) (citation omitted). Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). The brief must:

(1)  provide a summary of the procedural history and facts, with citations to the record;

(2)  refer to anything in the record that counsel believes arguably supports the appeal;

(3)  set forth counsel's conclusion that the appeal is frivolous; and

---

[3]  Appellant filed a notice of appeal on April 12, 2016. On April 14, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court granted a requested extension to file a concise statement. On June 6, 2016, counsel for Appellant filed a statement of his intent to file an **Anders** brief pursuant Pa.R.A.P. 1925(c)(4). On June 9, 2016, the trial court entered an order transmitting the record to this Court without filing an opinion.

(4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel must also provide a copy of the **Anders** brief with a letter that advises his client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Bennett**, 124 A.3d at 330 (citation omitted).

Here, counsel has fulfilled all of the abovementioned procedural requirements. Appellant has not filed a *pro se* response to counsel's petition to withdraw.[4] Because all of the technical requirements of **Anders**/**Santiago** have been met, we proceed to examine the issues identified in the **Anders** brief.

_____

[4] Instead, Appellant filed a *pro se* motion requesting case-related documents on February 16, 2017. Therein, Appellant alleges that trial counsel "failed to forward certain parts of the certified record" to him so that he could "mount any defense [] to [the] **Anders** brief." *Pro Se* Motion for Documents, 2/16/2017, at ¶¶ 1-2. As will be explained at length *infra*, Appellant is entitled to the documentation for future *pro se* litigation. However, because the request was untimely, we will not grant additional time to file a *pro se* response to the **Anders** brief with this Court.

The first issue raised in the **Anders** brief is a challenge to the sufficiency of the evidence on all of Appellant's convictions. We will examine each conviction in turn.

Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

Regarding conspiracy, we have concluded:

> To convict of criminal conspiracy, the evidence must establish that the defendant entered an agreement with another person to commit or aid in the commission of an unlawful act, that the conspirators acted with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. 18 Pa.C.S.A. § 903. An explicit or formal agreement to commit crimes can seldom,

if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

Once a conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators. In this regard, the law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design.

Furthermore, where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy.

*Commonwealth v. Geiger*, 944 A.2d 85, 90–91 (Pa. Super. 2008) (case citations and quotations omitted).

"A person is guilty of robbery if, in the course of committing a theft, he [] inflicts serious bodily injury upon another [or] threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. § 3701(a)(1)(i)-(ii). Serious bodily injury is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, there was ample evidence of a robbery and conspiracy to commit robbery. Appellant and his co-defendants engaged Cook to lure the

victim into believing he would engage in sex with Cook, so they could rob him. The three co-defendants clearly worked in concert, following the victim in a car together, rushing the victim's stairs and breaking down his door, brandishing firearms and demanding money, taking marijuana and money after pistol-whipping the victim, fleeing in unison, damaging a surveillance camera to avoid apprehension, and then distributing the proceeds of the robbery. Cook testified that Appellant was involved in the conspiracy and detailed each co-conspirator's role. N.T., 12/7/2015, at 66-119. The jury saw video taken from the apartment's surveillance system of the three men working together before, during, and after the crimes. N.T., 12/8/2015, at 93-113. Moreover, the victim testified that all three co-defendants beat him and stole money and drugs from him. N.T., 12/3/2015, at 219-221. We find this evidence sufficient to support Appellant's conspiracy and robbery convictions.

"A person is guilty of aggravated assault if he [] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702. We have found:

> To obtain a conviction for aggravated assault when the victim sustained serious bodily injury, the Commonwealth must establish that the offender acted intentionally, knowingly, or with a high degree of recklessness that included an element of deliberation or conscious disregard of danger. At a minimum, the Commonwealth must prove

- 10 -

that the offender acted with malice, consciously disregarding an unjustified and extremely high risk that his actions might cause death or serious bodily harm. In other words, a defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Commonwealth v. Faulk*, 928 A.2d 1061, 1070 (Pa. Super. 2007). Here, Appellant and his co-defendants used their firearms to inflict multiple blows to the victim's face and head. N.T., 12/3/2015, at 219-221. Appellant also fired a shot through the apartment door of the victim's neighbor. More specifically, the neighbor testified that he cracked his front door open and saw Appellant turn towards him while holding a firearm. The neighbor instinctively closed the door and ducked, but the bullet struck him in the arm. *Id.* at 140-145. In both instances, one could reasonably anticipate death or serious bodily injury would likely and logically result from Appellant's conduct. Hence, there was sufficient evidence to support Appellant's two convictions for aggravated assault.

A person is guilty of burglary if he or she enters a building or occupied structure with the intent to commit a crime therein, unless he is licensed or privileged to enter. *See* 18 Pa.C.S.A. § 3502(a). Here, the victim testified that he saw the three co-defendants rush towards him up the stairs and that when the victim "tried to close [his] door, [the co-defendants] kicked it in." N.T., 12/3/2015, at 219. The door came off its hinges and landed on top of the victim. *Id.* Clearly, Appellant was not privileged to enter the victim's

- 11 -

residence. Once inside, as detailed above, Appellant committed aggravated assault and robbed the victim.[5] Accordingly, the Commonwealth provided sufficient evidence that Appellant committed burglary.

Finally, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license" is guilty of carrying a firearm without a license. 18 Pa.C.S.A. § 6106. The Commonwealth entered into evidence a certificate of nonlicensure, showing Appellant did not have a license to carry a firearm. N.T., 12/8/2015, at 230. As previously discussed, there was ample evidence that Appellant was carrying, and in fact fired, a firearm on the day in question. Hence, Appellant's firearm conviction was properly supported.

Next, Appellant asserts that his convictions were against the weight of the evidence. The standard of appellate review for a claim that the verdict was against the weight of the evidence is limited to a determination of whether the trial court abused its discretion in denying the appellant's post-sentence motion *i.e.* that the fact finder's verdict "shocked the

---

[5]   We note that because Appellant's convictions for robbery and aggravated assault were felonies, there was no trial court error in sentencing Appellant for burglary and the offenses committed inside the victim's apartment. **See** 18 Pa.C.S.A. § 3502(d) ("A person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.").

conscience." ***Commonwealth v. Lloyd***, 878 A.2d 867, 872 (Pa. Super. 2005). Here, the verdict is not shocking. Thus, we discern the trial court did not abuse its discretion when it entered an order on April 4, 2016 denying Appellant post-sentence relief on his weight of the evidence claim.

Finally, Appellant presents two interrelated discretionary aspects of sentencing claims. Appellant claims the trial court abused its discretion by imposing consecutive sentences, which in turn resulted in an excessive combined term of imprisonment amounting to a life sentence for Appellant. Appellant's Brief at 23-28.

We have previously determined:

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence. We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014) (internal citations and brackets omitted).

Here, Appellant complied with the first three aforementioned requirements. However, we conclude that Appellant's challenge to the imposition of consecutive sentences does not raise a substantial question.

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." **Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011). **See Commonwealth v. Hoag***, 665 A.2d 1212 (Pa. Super. 1995) (stating an appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently). In fact, this Court has recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012) *(en banc)* (citation omitted). That is "in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." **Prisk***, 13 A.3d at 533 (*quoting [***Commonwealth v.***] **Mastromarino***, 2 A.3d [581,] 587 [(Pa. Super. 2010)]) (quotation marks omitted).

**Commonwealth v. Austin**, 66 A.3d 798, 808–809 (Pa. Super. 2013).

Here, Appellant committed six violent felonies and injured two separate victims. The trial court was required to impose mandatory minimum sentences pursuant to 42 Pa.C.S.A. § 9714.[6] Appellant's challenge

---

[6] Upon independent review, we also conclude that Appellant's sentence under Section 9714 was legal. **See Commonwealth v. Furness**, 2016 WL 7406808, at *6 (Pa. Super. 2016) ("Section 9714 is not unconstitutional because it increases mandatory minimum sentences based on prior convictions."). We note, however, that the Pennsylvania Supreme Court recently granted an allowance of appeal to consider the constitutionality of mandatory minimum sentences imposed pursuant to Section 9714. **See Commonwealth v. Bragg**, 133 A.3d 328 (Pa. Super. 2016), *appeal*

*(Footnote Continued Next Page)*

to the consecutive nature of those sentences does not, in and of itself, present a substantial question. Moreover, the trial court did not impose all of Appellant's sentences consecutively; three sentences were imposed concurrently. Accordingly, Appellant's challenge to his aggregate sentence essentially amounts to a request for a volume discount. In light of the criminal conduct at issue in this matter, however, we do not find the consecutively imposed sentence raised the aggregate sentence to an excessive level. Thus, Appellant fails to present a substantial question for our review.

Regardless, assuming Appellant had presented a substantial question, Appellant is not entitled to relief. We review sentencing for an abuse of discretion. *Austin*, 66 A.3d at 809 (citation omitted). Here, the trial court, had the benefit of a presentence investigation report, the sentencing guidelines, and mitigating evidence presented by defense counsel prior to imposing sentence. N.T., 2/17/2016, at 17-23; *see also Commonwealth v. Bonner*, 135 A.3d 592, 605 (Pa. Super. 2016) (Where a presentence investigation report exists, we presume that the trial court was aware of relevant information regarding the defendant's character and weighed those

*(Footnote Continued)* ———————————

*granted*, 143 A.3d 890 (Pa. 2016). Until our Supreme Court renders a decision in *Bragg*, we are bound by our prior finding that Section 9714 is constitutional. *See Commonwealth v. Slocum*, 86 A.3d 272, 278 n.9 (Pa. Super. 2014) ("This Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court.").

considerations along with mitigating statutory factors. A presentence investigation report constitutes the record and speaks for itself.). The trial court recognized that Appellant was a repeat offender, having been arrested 33 times (24 adult arrests and 9 juvenile arrests). N.T., 2/17/2016, at 18. The trial court then fully and adequately set forth the reasons for its sentence on the record. *Id.* at 17-23. Thus, even if we reached the merits of Appellant's discretionary aspects of sentencing claims, we would discern no abuse of discretion.

On a final note, we address Appellant's motion for documents, which as previously discussed, Appellant filed with this Court on February 16, 2017. Initially, we recognize that "[i]f, [] an *Anders* brief is filed, the defendant should be permitted to present his issues to the Court prior to the final disposition of the appeal. Otherwise, the requirement of notifying the client of his right to do so would be a pointless exercise." *Commonwealth v. Baney*, 860 A.2d 127, 130 (Pa. Super. 2004). However, in *Baney*, we also determined,

> [when] an attorney files an *Anders* brief, it is akin to the defendant being without counsel, since the attorney has not made any argument on his behalf, but has merely flagged "potential" issues. Therefore, the following is the appropriate procedure:
>
> 1. The Superior Court should initially consider only the *Anders* brief to determine whether the issues are in fact wholly frivolous.
>
> 2. If the Court determines that the issues are not wholly frivolous, it should grant relief accordingly.

- 16 -

3. If it finds the issues in the **Anders** brief to be wholly frivolous, the Court **should determine whether the defendant has been given a reasonable amount of time to** either **file a *pro se* brief** or obtain new counsel. **See Anders**, 386 U.S. at 744 ("A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses").

4. **When a reasonable amount of time has passed and no *pro se* or counseled brief has been filed, the Court should dismiss the appeal as wholly frivolous pursuant to its initial determination and affirm the decision of the trial court.**

5. When a *pro se* or counseled brief has been filed within a reasonable amount of time, however, the Court should then consider the merits of the issues contained therein and rule upon them accordingly.

*Id.* at 129 (emphasis added).

In this case, we recognize that in the **Anders** context Appellant should be permitted to present *pro se* issues to this Court, if he deems them worthy of our review. However, we have also cautioned that such actions must be done within a reasonable amount of time. Here, Appellant's counsel filed the **Anders** brief with our Court on July 19, 2016. Appellant concedes he received it. Thereafter, Appellant's request for record documents came almost six months later. Moreover, the Commonwealth filed a response to the **Anders** brief on December 6, 2016. Thus, Appellant's request for documents also fell outside the period for filing a *pro se* response to the Commonwealth's brief. **See** Pa.R.A.P. 2185(a)(1) (time for serving and

filing briefs). "Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants." **Commonwealth v. Blakeney**, 108 A.3d 739, 766 (Pa. 2014) (citation omitted). "Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." **Id.**

Accordingly, in this instance, we conclude that Appellant did not make his request for documents within a reasonable amount of time and, in turn, Appellant did not file a timely *pro se* response to the **Anders** brief. Thus, we will not permit additional briefing merely because Appellant wishes to proceed *pro se* belatedly. We independently reviewed the record and we have not found any potentially meritorious issues.

For all of the foregoing reasons, we dismiss the appeal as wholly frivolous and affirm the decision of the trial court. However, because we are permitting counsel to withdraw, before doing so, we direct trial counsel to provide Appellant with the requested documentation so Appellant may petition for allowance of appeal *pro se* before our Supreme Court, if he so chooses.

Motion for documents granted. Motion to withdraw granted, subject to prior transfer of requested documents to Appellant. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/17/2017</u>