J-S05002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
          v.                   :
                               :
                               :
IZAHA DARRAIL BURNS            :
                               :
          Appellant            :   No. 727 WDA 2018

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0000013-2017

BEFORE:   PANELLA, P.J., NICHOLS, J., and STRASSBURGER\*, J.

MEMORANDUM BY PANELLA, P.J.:              **FILED AUGUST 15, 2019**

Izaha Darrail Burns appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1); possessing instruments of crime,18 Pa.C.S.A. § 907(a); theft by unlawful taking, 18 Pa.C.S.A. § 3921(a); simple assault, 18 Pa.C.S.A. § 2701 (a)(1); criminal mischief, 18 Pa.C.S.A. § 3304(a)(5); and two counts of recklessly endangering another person, 18 Pa.C.S.A. § 2705. Appellant challenges the sufficiency of the evidence and claims his sentence is excessive.  We affirm on the basis of the trial court opinion.

_____

\* Retired Senior Judge assigned to the Superior Court.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. *See* Trial Court Opinion, 9/20/18, at 1-6. Therefore, we have no reason to restate them at length here.

We note briefly that around 2 a.m. on the night in question, Burns and a friend encountered the victim, Veronica Concepcion Davila and two of her companions at a McDonald's. The women were out celebrating Davila's birthday. At least two, and possibly all three, of the women were intoxicated.

Burns made disparaging remarks about Davila's appearance. His remarks ignited an argument. One of Davila's companions, Morgan Henderson, showed Burns she had a knife on her key chain. The encounter was recorded on surveillance video.

The three women decided to leave McDonald's for an after-hours social club. However, they eventually realized that Davila's purse and cell phone were missing. When they called her phone, Burns answered it. He agreed to give back the items, if they returned to the McDonald's.

Nevertheless, when the two arrived back,[1] Burns got into an argument about how Davila's phone and purse got into his car. Burns punched Davila in the face and refused to return the cell phone. Burns then left in his car.

_____

[1] After the phone call, the third woman, Daliesha (Tate) Pink, Morgan's sister, left the other two and went home.

The women followed Burns, planning to assault him with an empty wine bottle. However, when Burns parked and Davila tried to enter his car, he shot at her.[2]

The women fled, but Burns got out of his car and pursued them. He shot at Henderson's car, causing over five thousand dollars in damages. In the haste to escape, Henderson slumped low in her seat to dodge Burns' fusillade and she backed into a utility pole, causing substantial property damage.

In the end, Burns fired ten shots that struck Davila. As a result, she suffered severe injuries, requiring a tracheostomy to provide her with an airway so she could breathe. Davila was also shot in the back, both arms, and in the chest. She suffered three fractured ribs, a punctured lung, and a shattered shoulder blade. Davila still had the tracheotomy at trial. She could not breathe on her own without it.

The jury convicted Burns of the crimes previously noted.[3] After making a correction, the court imposed an amended aggregate sentence of not less than sixty-three months nor more than one hundred twenty-six months of

_____

[2] There is no dispute that Burns legally possessed the handgun he was carrying.

[3] The jury acquitted Burns of two counts of attempted homicide. **See** N.T. Trial, 9/22/17, at 11-12. The jury also acquitted Burns of aggravated assault against Henderson, and receiving stolen property.

incarceration in a state correctional institution. **See** Amended Order, 9/13/18; **see also** Trial Court Opinion at 1. The court noted that it had taken into account the pre-sentence investigation report ("PSI"), as well as Burns' relatively young age (twenty-four) and lack of a prior criminal record, as well as the Sentencing Guidelines. The court also noted the character witnesses who testified on Burns' behalf.

The court denied Burns' motion to modify or reconsider sentence. This appeal followed the trial court's grant of permission to appeal *nunc pro tunc.*

Appellant presents two questions for our review:

A. Whether the Commonwealth failed to present sufficient evidence to find the Appellant guilty beyond a reasonable doubt of aggravated assault, theft by unlawful taking, criminal mischief, and reckless endangerment?

B. Whether the Appellant's sentence is manifestly excessive, clearly unreasonable and inconsistent with the objectives of the Sentencing Code?

Appellant's Brief, at 3.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the first issue Burns has raised on appeal. The trial court opinion properly disposes of Burns's arguments, and we adopt it as our own. **See** Trial Court Opinion, 9/20/18, at 6-14 (concluding that Commonwealth sustained its burden of proof with respect to each of the crimes for which Burns was convicted; specifically, aggravated assault (shooting at Davila and Henderson); possessing instrument of crime

- 4 -

(possession and use of handgun), theft by unlawful taking (refusal to return cell phone and purse), criminal mischief (firing handgun and striking Morgan Henderson's vehicle, causing more than $5,000 in damages); and recklessly endangering another person (placing Davila and Henderson in danger of death or serious bodily injury).

We add that the Commonwealth presented sufficient evidence to sustain the jury's conviction of Burns for recklessly endangering another person despite Burns's claims of self-defense. Burns did not properly develop an argument in support of self-defense on this charge; he argues that actions taken by Davila and Henderson *after* he punched Davila in the face cast the two women as the aggressors. He cites to no authority to support this argument. We therefore conclude Burns is entitled to no relief on his claim that he acted in self-defense when he punched Davila.

Similarly, the trial court correctly found that the evidence at trial was sufficient to support his conviction for recklessly endangering Henderson despite his claims of self-defense. Henderson could arguably have been cast as the instigator of the encounter that ended with Burns firing multiple rounds into her vehicle while she was driving away. However, the trial court properly recognized the evidence supported an inference that Burns continued to shoot at Henderson's vehicle while Henderson was attempting to flee the scene. The jury was entitled to find that Burns's need for self-defense ended when the women began to flee.

Turning to Burns's challenge to the discretionary aspects of his sentence, we agree with the trial court that Burns' claim of an excessive sentence for failure to consider the factors set out at 42 Pa.C.S.A. § 9721(b), particularly where the trial court was informed by a PSI, does not present a substantial question for our review. **See** Trial Court Opinion, 9/20/18, at 14-17; **Commonwealth v. Kane**, 10 A.3d 327, 335–36 (Pa. Super. 2010) (stating bald claim that sentencing court "failed to consider" factors set forth in 42 Pa.C.S.A. 9721(b) does not raise substantial question).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2019

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
v. : CRIMINAL DIVISION
:
IZAHA DARRAIL BURNS, DEFENDANT : NO. 13 OF 2017

## OPINION

The Defendant, Izaha Darrail Burns, filed a Notice of Appeal Nunc Pro Tunc from the judgment of sentence entered October 27, 2017. The Defendant filed a Rule 1925(b) Statement of Matters Complained of on Appeal on September 10, 2018. This Opinion is in response thereto.

## PROCEDURAL BACKGROUND

On September 25, 2017, after a four-day jury trial, the Defendant was found guilty of Aggravated Assault, Possession of Instruments of Crime, Theft by Unlawful Taking, Simple Assault, Criminal Mischief, and two counts of Recklessly Endangering Another Person.[1]

On October 27, 2017, the Defendant was sentenced to an aggregate period of 63 – 126 months of incarceration. The Defendant was found to be RRRI eligible. On November 6, 2017, a Post-Sentence Motion was filed seeking modification of the sentence to reflect mitigating factors. The Post-Sentence Motion was denied on November 7, 2017. The Defendant did not timely file a notice of appeal with the Superior Court.

On April 12, 2018, the Defendant filed a Motion for Nunc Pro Tunc Reinstatement of Appellate Rights. The Motion was granted on May 1, 2018. A Notice of Appeal was filed with the Superior Court on May 1, 2018, at Docket Number 727 WDA 2018. After trial counsel filed

---

[1] Count 5, Aggravated Assault, 18 Pa.C.S.A. §2702(a)(1); Count 8, Theft by Unlawful Taking, 18 Pa.C.S.A.§3921(a); Count 11, Criminal Mischief, 18 Pa.C.S.A. §3305(a)(5); and Counts 12 and 13, Recklessly Endangering Another Person, 18 Pa.C.S.A. §2705.

1

a notice of intent to file an *Ander's* Brief, the matter was re-assigned to the undersigned appellate counsel.

On August 21, 2018, Appellate counsel filed an Application for Special Relief with the Superior Court seeking remand for purposes of filing an amended Rule 1925(b) Concise Statement of Matters Complained of on Appeal. On August 23, 2018, the Superior Court granted the application and remanded the matter for the filing of a concise statement of matters complained of on appeal.

On September 10, 2018, the Defendant filed an Amended Statement of Matters Complained of on Appeal. The Defendant challenges the sufficiency of the evidence of Aggravated Assault, Theft by Unlawful Taking, Criminal Mischief, and both counts of Recklessly Endangering Another Person. The Defendant argues the trial court abused its discretion at sentencing and the Defendant's aggregate sentence is manifestly excessive, clearly unreasonable, and inconsistent with the objectives of the Sentencing Code.

## FACTUAL BACKGOUND

The charges arose in the early morning hours of October 22, 2016, around 2:15 a.m., at the McDonald's restaurant on 12th and Sassafras Streets in Erie, Pennsylvania. The events of October 22, 2016, began on the evening of October 21, 2016, when the victim, Veronica Concepcion Davila ("Davila"), Morgan Henderson, and her sister, Daliesha Pink ("Pink"), went to a bar to celebrate Davila's birthday. Morgan Henderson ("Henderson") was the driver of a dark blue Hyundia Accent. *Trial Transcript, Day 1, September 19, 2017, pp. 71, 72. ("T.T. 1")*. After an evening of drinking at the Docksider bar, Davila, Henderson and Pink went to McDonald's restaurant shortly after 2:00 a.m. at 12th and Sassafras Streets in the city of Erie. Henderson had not been drinking, but Davila and Pink were visibly intoxicated. *T.T. 1, p. 73.*

2

Inside the restaurant, the Defendant and his friend, Sean McInnis, began making disparaging remarks about Davila's clothing and her person. *T.T. 1, pp. 57, 77, 78.* Henderson took offense at the remarks and engaged the Defendant in a verbal altercation while brandishing a pocket knife on her key chain. *T.T. 1, pp. 79, 80, 81.* At some point during the encounter, Davila left the restaurant with her purse and phone. She returned to the restaurant with just her wallet. *Trial Transcript, Day 2, September 20, 2017, pp. 30, 31 ("T.T. 2").* The Defendant was driving a dark blue Chevy Malibu, also parked in the McDonald's parking lot. *T.T. 1, p. 51.*

Upon leaving the restaurant at approximately 2:30 a.m., the women decided to go to an after-hours bar. On their way to the bar, the women stopped at a Shell gas station and Davila noticed her purse and phone were missing. *T.T. 1, p. 84.* Davila was unconcerned about the missing items as she still had her wallet with her. *Id.* Upon leaving the after-hours bar at 4:00 a.m., Henderson drove Davila and Pink to their home. Davila became concerned about her missing phone . *T.T. 1, p. 86.* Davila used Pink's phone to call her own number. *T.T. 1, p. 87.* Pink left the women and went home. A male (the Defendant) answered Davila's phone and told her he had found her cell phone at McDonald's. If she wanted her phone back, she would have to meet him at the same McDonald's at 12th and Sassafras Streets. *T.T. 1, pp. 88, 89.*

At approximately 4:14 a.m., Davila and Henderson returned to McDonald's and parked in the lot. Henderson remained in the car as Davila entered the restaurant and met the Defendant. *T.T. 2, p. 43.* When she requested he return the phone to her, he kept asking her how her phone and purse ended up in his car. The Defendant was upset that someone may have been in his car. The Defendant was looking for an explanation as to how Davila's belongings ended up in his car. *T.T. 2, p. 34.* When Davila could not provide a satisfactory answer, the Defendant punched Davila in the face and refused to return her phone. *T.T. 2, pp. 34, 36.* Davila was

3

angry, returned to Henderson's car and told her the Defendant had punched her in the face. Davila and Henderson decided to follow the Defendant and beat him up. *T.T. 2, p. 36; T.T. 1, p. 93.* Eventually, Davila pieced together that she mistakenly must have put her phone and purse in the Defendant's car, rather than Henderson's, as both vehicles were dark blue. *T.T. 2, p. 45.*

The Defendant exited the restaurant and left the parking lot in his car. Davila and Henderson followed the Defendant to his home at 516 East 21st Street in Erie, where he parked in the driveway. *T.T. 2, p. 36.* The Defendant's home is on the north side of the street. Henderson pulled up on the south side of the street, kitty-corner toward the east from the Defendant's residence. *Id.*

Davila exited Henderson's vehicle and took a Seagram's wine cooler bottle with the intent of striking the Defendant. *T.T. 2, p. 37.* Davila ran towards the Defendant's vehicle. She pulled the Defendant's car door open but the Defendant pulled it shut. *T.T. 2, pp. 37, 38.* The Defendant then shot Davila in the chest. Davila screamed and started running back toward Henderson's vehicle. *T.T. 2, p. 38.* The Defendant exited his car and continued shooting at Davila as she was running for Henderson's vehicle. *T.T. 2, p. 38.* Davila incurred ten gunshot wounds to her back and the backs of her arms. *T.T. 2, p. 39, 40.* At the time of trial, Davila testified with a tracheotomy still in place from the shooting. *T.T. 2, p. 41.*

Davila got into Henderson's vehicle, told her she had been shot and to get away from the scene. *T.T. 2, p. 39.* The Defendant continued shooting at Henderson's vehicle, striking the windshield and driver's side of the vehicle. *T.T. 1, pp. 52, 53, 98.* Henderson tried to flee by putting her car in reverse and rapidly backing up on East 21st Street toward Wallace Street. Henderson's car spun out of control and crashed into a pole. *T.T. 1, p. 98.*

4

After the airbags deployed, Henderson realized her car was not drivable and Davila was severely wounded. *T.T. 1, p. 99; T.T. 2, p. 39.* She exited the car and pulled Davila out of the car when she saw all the blood in her vehicle. *T.T. 1, pp. 99, 100.* Henderson then began banging on people's doors and windows, asking people to get help because Davila had been shot. *T.T. 1, p. 100.* Davila crawled away to a nearby field/parking lot. *T.T. 1, p. 101.* Henderson was taken to the police station where she later identified the Defendant in a line-up. *T.T. 2, p. 102.*

Upon arriving at the scene, the police found Henderson's car crashed near the 400 block of East 21st Street, near the Pulaski social club on Wallace Street. *T.T. 1, pp. 40, 50.* The police found Davila lying in the south lot of the Polaski *(sic)* club parking area. *T.T. 1, p. 40.* The police then followed the trail of shell casings and blood to the Defendant's vehicle. *T.T. 1, pp. 41, 42, 51, 62.*

When the police arrived at the Defendant's home, the Defendant came down from the second floor apartment. *T.T. 1, p. 55.* The police conducted a pat-down and found Davila's black ZTE smart phone in his pocket. *T.T. 1, p. 56.*

Twelve 9 mm shell casings and a bullet fragment were found at the scene. The police recovered five 9 mm shell casings from inside the Defendant's vehicle. Three casings were on the driver's seat; two were on the floor in front of the driver's side seat. *T.T.1, p. 60.* One casing was recovered just outside the Defendant's driver's side door. *T.T. 1, p. 61.* Six more shell casings were recovered from the street area in front of the Defendant's home and near the intersection of East 21st and Wallace Streets. *T.T. 2, pp. 55, 56.*

The police found a nine millimeter SD brand pistol, a Taurus nine millimeter semi-automatic firearm, two magazines with the Taurus, and several boxes of 9 mm ammunition

5

inside the Defendant's residence. *T.T. 2, p. 75.* Ballistics testing showed the Taurus nine millimeter firearm was used to fire the bullets. *T.T. 2, p. 75*

In a video-taped statement to the police, the Defendant admitted he had Davila's purse. *Commonwealth Exhibit 62, Defendant's video recorded statement to the police, T.T. p. 78.*

## SUFFICIENCY OF THE EVIDENCE CLAIMS

When evaluating a challenge to the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the Commonwealth as the verdict winner. *Com. v. Hargrave,* 745 A.2d 20, 22 (Pa.Super. 2000), *appeal denied,* 563 Pa. 683, 760 A.2d 851 (2000)(internal citations omitted). Evidence will be deemed sufficient when it establishes each material element of the crime charged, and the commission thereof by the accused, beyond a reasonable doubt. *Com. v. Jones,* 874 A.2d 108, 120-21 (Pa.Super. 2005). The Commonwealth may sustain its burden of proof wholly by circumstantial evidence. *Com. v. Hopkins,* 747 A.2d 910, 913 (Pa.Super. 2000). Moreover, it is axiomatic that it is within the province of the jury to pass upon the credibility of witnesses and determine the weight to be accorded the evidence adduced. *Com. v. Alston,* 461 Pa. 664, 337 A.2d 597 (1975); *Com. v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975).

A review of the record confirms the Commonwealth sustained its burden of proof with respect to each of the crimes.

### A. AGGRAVATED ASSAULT

The Defendant claims the Commonwealth failed to establish he intended to cause serious bodily injury or that it was his conscious object or purpose to cause such bodily injury as he was

6

reacting to Davila's aggression toward him by approaching his vehicle with an empty wine bottle.

Aggravated Assault is defined in relevant part, as follows:

> A person is guilty of aggravated assault if he: attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S.A. §2702(a)(1).

Serious bodily injury is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. §2301. To obtain a conviction for aggravated assault when the victim sustained serious bodily injury, the Commonwealth must establish that the offender acted intentionally, knowingly, or with a high degree of recklessness that included "an element of deliberation or conscious disregard of danger." *Com. v. O'Hanlon,* 653 A.2d 616, 618 (1995); *Com. v. Faulk,* 928 A.2d 1061, 1070 (Pa.Super. 2007).

The Defendant's attempt to raise a self-defense claim as justification for the shootings is unavailing. "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." *Com. v. Bullock,* 948 A.2d 818, 824, (Pa.Super. 2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Com. v. McClendon,* 874 A.2d 1223, 1230 (Pa.Super. 2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. *Com. v. Burns,* 765 A.2d 1144, 1149 (Pa.Super. 2000).

7

In this case, Davila was the initial aggressor when she approached the Defendant with an empty wine bottle while he was in his vehicle in his driveway. When Davila managed to open his car door, the Defendant was able to close it immediately. The Defendant then shot Davila in the upper right chest area, causing a severe injury. *T.T.1, p. 35.* Davila then turned away and fled to Henderson's car parked across the street. As she was fleeing, the Defendant exited his vehicle and continued to shoot at Davila. *T.T. 2, p. 39.* The Defendant's bullets struck Davila in her back and the backs of her arms. Davila had three fractured ribs, a punctured lung, a shattered shoulder blade in addition to numerous wounds to her arms. *T.T.1, p. 35; Sentencing Transcript, October 27, 2017, p. 20.*

He continued to shoot at Henderson's vehicle while both women were in the car and actively fleeing the gunfire. Neither Davila nor Henderson posed any threat to the Defendant after he shot her in the chest and she retreated from Defendant's driveway to Henderson's car. The Defendant safely could have remained in his vehicle with his car door locked or left his vehicle and gone into his home. Instead, the Defendant continued the use of force after he had a duty to retreat. The Commonwealth disproved the Defendant's position of justification for his actions.

The Commonwealth proved the elements of Aggravated Assault beyond a reasonable doubt and the victim, Davila, sustained multiple serious bodily injuries.

## B. THEFT BY UNLAWFUL TAKING

The Defendant claims the evidence is insufficient to sustain the guilty verdict for Theft by Unlawful Taking as Davila had placed her phone in the Defendant's vehicle. After the Defendant found Davila's phone in his car, the Defendant tried to return the phone. As such,

8

there was insufficient evidence to show the Defendant had no intent to deprive Davila of her movable property. The argument is specious.

To sustain a charge of Theft by Unlawful Taking, the Commonwealth must show the Defendant took movable property of Davila with intent to deprive her thereof. 18 Pa.C.S.A. §3921(a).

The factual basis for the Defendant's claim is belied by the record. The Defendant told Davila he was in possession of her phone and he would give it back to her at McDonald's. When Davila returned to McDonald's to meet with the Defendant, he could have simply returned the phone to her. Instead, he punched her in the face, kept the phone, and got in his car. The phone was found in the Defendant's pocket by the police. These facts support the elements the Defendant intended to deprive Davila of her phone. The claim is meritless.

## C. CRIMINAL MISCHIEF

The Defendant claims the evidence is insufficient to sustain the charge of Criminal Mischief as Henderson's car would not have crashed if Davila and Henderson had not followed the Defendant to his residence seeking revenge. *Amended Statements of Matters Complained of on Appeal, September 10, 2018, p.3, ¶14.* The argument is fundamentally flawed.

The facts forming the basis of Criminal Mischief at Count 11 are set forth in the Information:

> [The District Attorney] charges that ... IZAHA DARRAIL BURNS did FIRE A GUN MULTIPLE TIMES, STRIKING VICTIM MORGAN HENDERSON'S VEHICLE, causing damage in the amount of MORE THAN $5,000, occurring at THE 500 BLOCK OF EAST 21ST STREET, CITY OF ERIE, Erie County, Pennsylvania; thereby the said IZAHA DARRAIL BURNS did commit the crime of CRIMINAL MISCHIEF, a FELONY OF THE THIRD DEGREE.

*Information, Count 11, February 27, 2017, (capitals in original).*

To establish the elements of Criminal Mischief, 18 Pa.C.S.A. §3304(a)(5), the Commonwealth must show the Defendant intentionally damaged the real or personal property of Henderson. In this case, the Defendant aimed and fired his gun at Henderson's vehicle which was struck in three different places. *T.T. 1, p. 52.* One bullet struck the windshield and two bullets struck the driver's side of the vehicle. *T.T. 1, p. 53; T.T. 2, p. 62.* Sergeant Robert McDonald of the Erie Police Department explained the Commonwealth's exhibits of the photographs taken of the bullet holes:

> MCDONALD: This is - - appears to be a bullet hole in the windshield on the driver's side of the vehicle. ... This would be a picture of the driver's side door of the vehicle that had the three bullet holes in it. ... This [the second bullet hole] would be a bullet hole about halfway up the door on the driver's side, just below the door handle of the same vehicle. This [the third bullet hole] is also on the driver's side, near the rear wheel just below the passenger rear door.

*T.T.1, pp. 52, 53; Commonwealth Exhibit's 9, 10, 11, 12.*

The crime was charged as a felony due to the monetary amount of damage to Henderson's vehicle from the Defendant's gunfire. Neither Henderson nor Davila caused the Defendant to exit his vehicle and continue shooting at them and Henderson's vehicle. The Defendant had already shot Davila in the chest and was retreating from the gunfire. The women were attempting to flee the scene in Henderson's vehicle when the Defendant continued to shoot at the vehicle.

The Defendant argues Henderson alone is responsible for crashing her vehicle. Henderson had purchased the vehicle the day before the incident for $13,000. *T.T. 2, p. 23.* After being shot by the Defendant in the chest, Davila ran to Henderson's vehicle. After Davila had reached Henderson's vehicle and got in the car, the Defendant kept shooting at Henderson's vehicle. One of the gunshots struck her windshield on the driver's side of the vehicle and

whizzed past her head. *T.T. 1, pp. 96-98.* Henderson ducked down low in her seat to avoid being struck by the gunshots. *T.T. 1, pp. 96-98.*

As soon as Davila got in Henderson's vehicle, Henderson and Davila attempted to flee the Defendant's gunfire by rapidly backing the car away from the Defendant's line of fire. Henderson crashed the vehicle into a pole as she could not see where she was going. Her visibility was impaired due being slumped down in the car to avoid being shot. *Id.* As a result, the vehicle was totaled. *T.T. 2, p. 23.*

But for the Defendant's actions in shooting at Henderson's vehicle, Henderson would not have tried to flee the scene by driving the car in reverse when she could not see. The Defendant's actions caused both the initial damage from the gunshots to the vehicle and the subsequent damage when Henderson crashed her vehicle fleeing from the Defendant.

The Defendant caused the monetary loss in excess of $5,000 as established by the evidence. *See Com v. Marrero,* 914 A.2d 870 (Pa.Super. 2006). The evidence is sufficient to sustain the guilty verdict.

## D. RECKLESSLY ENDANGERING ANOTHER PERSON

The Defendant challenges the sufficiency of the evidence at Counts 12 (victim Davila) and 13 (victim Henderson), Recklessly Endangering Another Person, 18 Pa.C.S.A. 2705. The Defendant claims he had no intention of placing either Davila or Henderson in danger of death or serious bodily injury. The Defendant asserts Both Davila and Henderson were the aggressors. The Defendant claims his actions were reactions to the victims' aggression; he did not possess the requisite intent to sustain the guilty verdicts.

11

Recklessly Endangering Another Person occurs when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. §2705.

For purposes of Recklessly Endangering Another Person, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." To sustain a conviction, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. *Com. v. Thomas*, 879 A.2d 246 (Pa.Super. 2005). Danger, not merely the apprehension of danger, must be created. The *mens rea* for Recklessly Endangering Another Person is a conscious disregard of a known risk of death or great bodily harm to another person. *Com. v. Hopkins*, 747 A.2d 910, 915-916 (Pa.Super. 2000)(citations and quotation omitted).

### 1. Victim Veronica Concepcion Davila

The Defendant claims the evidence is insufficient to sustain the guilty verdict of Recklessly Endangering Another Person with respect to the victim Davila from the blow the Defendant inflicted to her face at McDonald's. The Commonwealth met its burden as the Defendant engaged in conduct which placed or may have placed this victim in danger of death or serious bodily injury. 18 Pa.C.S.A. §2705.

The *mens rea* of recklessness is the conscious disregard of a known risk of death or great bodily harm to another person. *Com. v. Reynolds*, 835 A.2d 720, 727 (Pa.Super. 2003). This crime requires (1) a *mens rea* - recklessness, (2) an *actus reus* - some 'conduct,' (3) causation - 'which places,' and (4) the achievement of a particular result - 'danger," to another person of death or serious bodily injury." *Com. v. Trowbridge*, 261 Pa Super. 109, 395 A.2d 1337, 1340

12

(1978). The defendant's conduct can arise from surrounding circumstances "so inherently dangerous that death or serious bodily injury would be a reasonably foreseeable result." *Com. v. Baker*, 429 A.2d 709, 710 (Pa. Super 1981).

Here, the Defendant, unprovoked, forcefully punched Davila in the face without warning or provocation. *Commonwealth Exhibit 27, McDonald's surveillance video.* Although he struck Davila only one time, the outcome could have been devastating. Simply because the victim sustained a relatively minor injury - red bruising to her face - this does not negate the fact that he placed the victim in danger of serious bodily injury. The evidence was, therefore, sufficient to support defendant's conviction for reckless endangerment.

In *Com. v. Lawton*, 272 Pa.Super. 40, 48, 414 A.2d 658, 662 (1979), the Superior Court upheld a reckless endangerment conviction where the defendant was wildly swinging his arms in a crowd of people and hit the victim in the head. The Superior Court held that the crime "does not require any particular person to be actually placed in danger, but deals with potential risks, as well as where a specific person actually is within the zone of danger." *Lawton, Id.* at 47. The "mere fact that the victim only sustained minor injuries and did not sustain 'serious bodily injury' does not ipso facto establish that appellant's actions did not place others in danger of such injury." *Id.* at 48.

In this case, Davila testified the Defendant punched her in the face causing red bruising. Video evidence showed the Defendant forcefully punched the victim in the face. *Commonwealth Exhibit 27.* This evidence supports the finding the Defendant's conduct foreseeably could have put this victim in actual danger of death or serious bodily injury. Therefore, the Defendant's conduct rose to the requisite level of recklessness to sustain the conviction at Count 12.

### 2. Victim Morgan Henderson

With respect to the victim, Morgan Henderson, the Defendant claims the intent element of reckless endangerment was not supported by sufficient evidence. The claim is fundamentally flawed as the Defendant pointed and shot his loaded firearm at Henderson's vehicle without regard for the danger his actions posed to the occupants of the vehicle.

The Defendant recklessly shot at Henderson's car striking the driver's side windshield and both of the driver's side doors while Henderson was in the driver's seat. Henderson testified she felt something whiz past her head after her windshield was shot. *T.T.1, p. 98.* Any one of those three shots could have struck her and inflicted mortal injuries or other serious bodily injuries. The Defendant demonstrated the present ability to inflict harm.

The Defendant's reckless actions displayed a conscious disregard of a known risk of death or great bodily injury. *Com. v. Peer,* 684 A.2d 1077 (Pa.Super. 1996); *see also, Com v. Trowbridge, supra.* The evidence was sufficient beyond a reasonable doubt the Defendant recklessly engaged in conduct which placed Henderson in danger of death or serious bodily injury. The claim is meritless.

### SENTENCING CLAIMS

The Defendant was sentenced as follows:

Count 5: Aggravated Assault – 54 to 108 months of incarceration;
Count 7: Possessing Instruments of Crime – 2 years of probation consecutive to Count 10;
Count 8: Theft by Unlawful Taking – one year of probation consecutive to Count 10;
Count 10: Simple Assault – 3 – 6 months of incarceration, consecutive to Count 11;
Count 11: Criminal Mischief – 12 – 24 months of incarceration concurrent with Count 13;
Count 12: Recklessly Endangering Another Person (victim Veronica Concepcion Davila), merged with Count 5; and
Count 13: Recklessly Endangering Another Person (victim Morgan Henderson) – 6 – 12 months of incarceration, consecutive to Count 5.

14

The sentence at Count 5 was in the low end of the standard range of the sentencing guidelines. The standard range of the sentencing guidelines is 54 to 72 months of incarceration. The sentencing guidelines included the deadly weapon enhancement.

The Defendant claims the trial court abused its discretion in imposition of sentence. Further, the Defendant claims the aggregate sentence is manifestly excessive, clearly unreasonable and inconsistent with the objectives of the sentencing code. Specifically, the Defendant claims the aggregate sentence does not comport with Section 9721(b) which states that confinement shall be consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.

The sentencing claims implicate discretionary aspects of the sentence. For any challenge to the discretionary aspects of a sentence, the threshold inquiry is whether Appellant has raised a "substantial question" permitting appellate review. *Com. v. Maneval*, 455 Pa.Super. 483, 688 A.2d 1198 (1997). "A substantial question exists where the statement sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Com. v. McNabb*, 819 A.2d 54, 56 (Pa. Super. 2003) *citing Com. v. Mouzon*, 812 A.2d 617 (Pa. 2002). If there is not a substantial question presented, appellate review of the discretionary aspects of the sentence is precluded.

The law on sentencing discretion is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Com. v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super. 2003)(citations and quotation marks omitted).

15

A sentencing court is required to place on the record its reasons for imposition of sentence. 42 Pa.C.S.A. §9721(b). The sentencing judge can satisfy this requirement by identifying on the record that he was informed by a presentence report. *Com. v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *Com. v. Pennington*, 751 A.2d 212, 217 (Pa.Super. 2000).

Where the sentencing court has the benefit of a pre-sentence report, the law presumes that the court was aware of the relevant information regarding the appellant's character and weighed those considerations along with the mitigating statutory factors delineated in the Sentencing Code. *Com. v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa.Super. 1995)(quoting *Com. v. Devers*, 546 A.2d 12, 18 (1988); *Com. v. Sanders*, 627 A.2d 183, 188 (Pa.Super. 1993).

In the case at bar, the Pre-Sentence Investigative Report and the sentencing guidelines were considered. Consideration was given to the Defendant's age (24 years old), lack of past criminal history, the nature of the crimes and the impact of the crimes on the victim and the community:

> THE COURT: ... In fashioning this sentence I am taking into account the statements of both counsel, the statement of the defendant, as well as the letter that was written by the victim Veronica. I'm also taking into account the character witnesses that were presented on behalf of the defendant, including Pastor Charles Mock, who I respect greatly, also Shaniece Morris, show fine family I know also, Rausann Powell, who I respect and know him from his football days at Cathedral Prep and Duquesne University, and also from Mrs. Twillie, the defendant's mother, who I believe was very sincere in her statements about her son. I'm also taking into account the pre-sentence investigation report which details the seriousness of the crimes charged. Also, I was the presiding judge of this trial.
>     I'll remind everybody that the jury was out about two full days in coming to a decision in this case, and I believe once it all shook out it was probably the proper verdict. You are very fortunate that you were not convicted of attempted homicide. You'd be looking at a lot more time. The jury did not find you guilty of those counts.
>     And as far as the facts of this case, this has been one of the most difficult that I've had to hear in my time as a judge. It was just a sad, sad set of circumstances. If anybody sat through that trial, the ridiculousness in the sequence of events here that led to this tragedy, it's - - it's - - I probably won't go

16

so far as to say bizarre, but that sequence of events you almost couldn't make up. And, you know, it was never really proven or brought out as to how this cell phone got in your car, but I think it's pretty simple to infer that between the two blue vehicles in there our victim put the cell phone in your car by mistake. Simple mistake that led to this tragedy.

Also, I know your attorney states that when you got out of that car that started a sequence of events, but I – I have to agree with the prosecutor here, it started much earlier than that. When I watched that video and saw how you hauled off and sucker-punched that unsuspecting girl that was just standing there, that really bothers me. And then I had to hear what happens after that, which is just a sad series of events here. And I just hope I never have to hear another case that would be similar to this that could have so easily been avoided.

And we have tragedies on both sides. We have two families and friends of the victims and defendants that - - and the defendant here, and these people are really hurting. It's just not about you.

...

... I am also taking into account the defendant's relative young age and taking into account greatly that he has no prior record whatsoever as an adult or juvenile. And that hurts, that you're going to have to go away to a state penitentiary, one of our young men in this community that did lead a law-abiding life up to this point. What you were even hanging around McDonald's in the middle of the night for the state you were in, I don't know about that, so I don't know how you were living your life, but I will at least give you credit for having no record whatsoever there.

But I have to take into account the guidelines as promulgated by the Pennsylvania Commission on Sentencing, and the sentence will be harsh, as it should be. Any lesser sentence would depreciate the seriousness of the charges involved and what Veronica is going to have to go through for the rest of her life really. ... this poor girl has been through a lot, had a lot of sad things happened to her in her life. Something like this should have never happened.

So once again, in fashioning this sentence I am taking into account the guidelines as promulgated by the Pennsylvania Commission on Sentencing.

*Sentencing Transcript, October 27, 2017, pp. 26 – 30.*

The foregoing establishes there was no abuse of discretion or error committed. The sentence was not manifestly excessive, clearly unreasonable or inconsistent with the objectives of the sentencing code. The sentence comports with the requirements of the Sentencing Code. The Defendant failed to establish a substantial question exists. The sentencing claim is meritless.

## CONCLUSION

For the reasons stated herein, the appellate issues are meritless. The Clerk of Records is directed to transmit the record to the Superior Court.

BY THE COURT:

DATE: 9/19/18

DANIEL J. BRABENDER, JR., JUDGE

cc: District Attorney's Office
Emily Merski, Esq., Public Defender Office, 509 Sassafras, Erie, PA 16507

18