**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lewis A. FAULK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2006.
Filed June 15, 2007.

Kenneth M. Baldonieri, Monessen, for appellant.

Thomas R. Grace, Asst. Dist. Atty., Greensburg, for Com., appellee.

BEFORE: LALLY–GREEN, McCAFFERY, and KELLY, JJ.

OPINION by McCAFFERY, J.:

¶ 1 Appellant, Lewis A. Faulk, appeals from his judgment of sentence for aggravated assault. Specifically, Appellant asks us to determine, *inter alia*, whether his waiver of his right to be present at trial was preceded by a proper colloquy and hence was valid. Following review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. Appellant was charged with aggravated assault and related offenses after he severely injured the victim by punching him in the face several times with a closed fist. The victim and another man, Mark Kastelic, had been watching television in Mr. Kastelic's living room when Appellant, who was an acquaintance of both men, came to the door. Mr. Kastelic admitted Appellant into the home and then walked toward the kitchen in the back to let his dog inside. Upon hearing some noises, Mr. Kastelic returned to the living room to find Appellant standing over the victim and hitting him in the face with a closed fist. The victim was beaten severely, bleeding profusely, and barely conscious. Appellant then walked out the door and left the premises while Mr. Kastelic sought emergency medical care for the victim. (*See* Trial Court Opinion, dated March 9, 2006, at 6).

¶ 3 The victim required many weeks of treatment for his trauma-related injuries, first at a hospital in the intensive care unit and then at a rehabilitation facility. His injuries included brain injury, several fractures, lost teeth, and subdural hematoma.[1] He experienced post-traumatic amnesia, and at the time of Appellant's trial, contin-

---

1. Subdural hematoma is defined as bleeding along the lining of the brain. (*See* Notes of Testimony Trial, ("N.T."), 1/7/05, at 187, testimony of prosecution expert witness Dr. Ross Zafonte). Risks associated with subdural hematoma include death, cognitive deficits, motor dysfunction, speech problems, and seizure. (*Id.* at 189).

ued to have difficulty with memory, balance, and walking. (*Id.* at 7).

¶ 4 Appellant was arrested shortly after the incident and charged with, *inter alia,* aggravated assault and simple assault.[2]

¶ 5 A succession of attorneys was appointed to represent Appellant. Initially, in October 2004, Patricia Elliott, Esq., was appointed as Appellant's counsel; approximately six months later she filed a motion to withdraw, citing a menacing and intimidating letter that she had received from Appellant and an irretrievable breakdown of the attorney-client relationship. Following a hearing on June 9, 2004, the court granted attorney Elliott's motion to withdraw and appointed Brian Aston, Esq., as Appellant's new counsel. In September 2004, Appellant sent a letter to the trial judge, firing attorney Aston and demanding new counsel, based on Appellant's perception that attorney Aston was devoting insufficient attention to Appellant's case. A third attorney, Scott Avolio, was appointed to represent Appellant. Citing an unspecified conflict, Appellant petitioned the court to choose an attorney other than Mr. Avolio. The court then appointed a fourth attorney, Michael DeMatt, on November 12, 2004.

¶ 6 Although Appellant was represented by appointed counsel throughout the pre-trial and trial proceedings, he filed numerous *pro se* petitions, regarding, *inter alia,* alleged Rule 600 violations, bail bond, discovery and evidentiary matters. Appellant also sent three threatening and profane letters to the trial judge, demanding recusal. In October 2004, the trial judge recused herself, and a new judge assumed responsibility for Appellant's case.

¶ 7 A three-day jury trial commenced on January 5, 2005. Just before jury selection began, the court discussed with Appel-

lant his dissatisfaction with his latest attorney, Mr. DeMatt. Appellant complained that Mr. DeMatt did not follow Appellant's instructions with regard to trial preparations, and Appellant stated to the court that he did not wish to be present for his trial. Appellant also threatened to disrupt verbally the *voir dire* proceedings. The court informed Appellant of his right to be present at trial and the risks of not exercising that right. However, Appellant refused to take an oath or to acknowledge the court's comments. Appellant was then transported from the courtroom, as he had requested. The trial was conducted in Appellant's absence, and after hearing extensive testimony, the jury found Appellant guilty of aggravated assault and simple assault. Sentencing was deferred pending the preparation of a pre-sentence report.

¶ 8 Approximately one month after the end of the trial, Appellant filed a *pro se* motion to vacate his conviction, alleging ineffective assistance of counsel. Per order of the trial court, Attorney DeMatt withdrew and Attorney James Wells was appointed as Appellant's new counsel. Appellant then sent a letter to the clerk of courts, stating that he would hence forth proceed *pro se* and would rely on court-appointed counsel only in a co-counsel capacity. Following a hearing, the court denied Appellant's request to proceed *pro se.* However, the court directed Attorney Wells to withdraw and appointed Mark Shire, Esq., to represent Appellant. On June 13, 2005, the court sentenced Appellant to serve not less than six and not more than twenty years in prison. Appellant filed a post-sentence motion, which was denied following a hearing.

¶ 9 After reinstatement of Appellant's direct appeal rights *nunc pro tunc,* Appel-

---

**2.** Respectively, 18 Pa.C.S.A. § 2702(a)(1) and  18 Pa.C.S.A. § 2701(a)(1).

lant filed a counseled appeal, raising the following five issues for our review:

A. Whether [Appellant] was denied his rights under the Sixth Amendment to the United States Constitution[;] Article I, Section 9 of the Pennsylvania Constitution[;] and Pa.R.Crim.P. 602(A) to be present at trial because [Appellant's] purported waiver was neither knowing nor intelligent?

B. Whether the sole eyewitness'[s] conflicting statements provided an adequate basis to support the jury's verdict that [Appellant] was guilty of aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(1)?

C. Whether the evidence was sufficient to support the jury's implied finding that [Appellant] consciously disregarded an unjustified risk of death or ser[i]ous bodily injury?

D. Whether the evidence was sufficient to support the jury's implied finding that [Appellant] exhibited reckless conduct to the degree that life-threatening behavior was certain to occur?

E. Whether the trial court abused its discretion by setting [Appellant's] maximum sentence at twenty (20) years?

(Appellant's Brief at 5). We address Appellant's issues in turn.[3]

■ ¶ 10 Appellant's first issue concerns his decision to absent himself from his trial. Appellant contends that his waiver of his right to be present at trial was neither knowing nor intelligent because the trial court did not conduct a proper and thorough colloquy. Therefore, Appellant argues, his waiver was invalid. We disagree.

■ ¶ 11 A defendant's right to be present at trial is guaranteed by the Sixth Amendment to the United States Constitution; by Article I, Section 9 of the Pennsylvania Constitution; and by Pennsylvania Rule of Criminal Procedure 602(a). *See, e.g., Taylor v. United States,* 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597, 604 (1996). This Court has previously declined to interpret our state Con-

---

**3.** In December 2006, nearly eleven months after filing his counseled direct appeal, Appellant filed with this Court a *pro se* "Notice of Intent to Proceed pro-se," in which he asserted his right to proceed *pro se* because of an unspecified conflict of interest with his attorney, Mark Shire. This Court treated Appellant's filing as a Motion to Proceed *Pro Se*, and the motion is hereby denied for the following reasons.

The United States Supreme Court has concluded that the right to self-representation conferred by the Sixth Amendment to the United States Constitution does not extend to appellate proceedings. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 154, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). In contrast, our Supreme Court has held that in this Commonwealth, an accused has the right to proceed *pro se* not only at trial but also through any appellate proceedings. *Commonwealth v. Grazier,* 552 Pa. 9, 12, 713 A.2d

81, 82 (1998) (citing *Commonwealth v. Rogers,* 537 Pa. 581, 583, 645 A.2d 223, 224 (1994)). However, our Supreme Court has also held that the court "has the discretion to require an appellant to remain with counsel after briefs have been filed rather than permit the disruption of the orderly disposition of the case." *Commonwealth v. Albrecht,* 554 Pa. 31, 62, 720 A.2d 693, 709 (1998) (*citing Rogers, supra*); *see also Commonwealth v. Pursell,* 555 Pa. 233, 251, 724 A.2d 293, 302 (1999) (explaining that in *Rogers, supra,* the Court held that "the Superior Court may prohibit the filing of *pro se* briefs by appellants represented by counsel on appeal.")

In the instant case, Appellant's counseled brief was filed on April 24, 2006, approximately seven months before Appellant filed his *pro se* motion to proceed *pro se*. Appellant's motion was manifestly untimely, and it is hereby denied.

stitution as requiring more protection for the accused with respect to trials *in absentia* than the United States Constitution. *See Commonwealth v. Hill,* 737 A.2d 255, 260 (Pa.Super.1999). Furthermore, the right may be waived either impliedly, via the defendant's actions, or expressly. *See, e.g., Commonwealth v. Vega,* 553 Pa. 255, 259–60, 719 A.2d 227, 229–30 (1998); *Commonwealth v. Sullens,* 533 Pa. 99, 102, 619 A.2d 1349, 1351 (1992).

¶ 12 For example, our Supreme Court has held that when a defendant is abusive and disruptive to the proceedings, the trial judge does not abuse his or her discretion in having the defendant removed from the courtroom. *Commonwealth v. Basemore,* 525 Pa. 512, 524–27, 582 A.2d 861, 867–68 (1990); *see also Allen,* 397 U.S. at 343, 90 S.Ct. 1057 (holding that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom").

██ ¶ 13 Furthermore, a defendant may be tried *in absentia* if he or she is absent without cause when the trial is scheduled to begin or if the defendant absconds without cause after the trial commences. *Commonwealth v. Wilson,* 551 Pa. 593, 598–99, 712 A.2d 735, 737 (1998); *Sullens, supra* at 104, 619 A.2d at 1352; *see also Taylor,* 414 U.S. at 20, 94 S.Ct. 194 (concluding that the trial court had committed no error in proceeding with a trial even though the defendant had chosen not to return to the courtroom for the afternoon session, and quoting *Allen,* 397 U.S. at 349, 90 S.Ct. 1057 (Brennan, J., concurring) for the proposition that "the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward").

██ ¶ 14 A criminal defendant can also expressly waive his right to be present at his trial; however, our Supreme Court has imposed certain requirements to ensure that such a waiver is knowing and intelligent. *Vega, supra* at 259–62, 719 A.2d at 230–31. The trial court must conduct a colloquy to communicate to the accused the nature of the constitutional right to be present at trial and the risks of failing to exercise this right. *Id.* at 260, 719 A.2d at 230. While our Supreme Court did not mandate any specific language or rote dialogue for this colloquy, the Court did state that "the inquiry must be calculated to insure a defendant is aware of the dangers and disadvantages of waiving his right to be present during trial." *Id.* at 262, 719 A.2d at 231.

> Such an inquiry would necessarily include, at a minimum, a discussion of whether the defendant understands that if trial proceeds without his presence: (1) he would be unable to participate in the selection of a jury; (2) he waives his right to confront and cross-examine witnesses; (3) he will not be present to testify in his own defense; and (4) any claim challenging effective assistance of counsel will be severely limited since the defendant has chosen not to participate in his defense and will be unable to aid counsel during trial.

*Id.*

██ ¶ 15 When we as an appellate court review a challenge to the validity of a waiver of the right to be present at trial, we look to the record to determine whether all the necessary information concerning the nature of the right and the risk of not exercising that right was communicated to the appellant. If such information was communicated to the appellant, the waiver will not be disturbed. *See id.* at

260, 719 A.2d at 230. "The focal point of this analysis is whether the [a]ppellant made an informed choice." *Id.*

¶ 16 We turn now to the instant case. At the beginning of trial, before jury selection had begun, Appellant stated directly that he did not wish to be present in the courtroom, and he threatened to disrupt the *voir dire* proceedings, as illustrated by the following excerpts from the transcript:

[Appellant]: I'm going to object to everything that happens, period.

[Court]: Well, you're not going to object because Mr. DeMatt is your attorney.

[Appellant]: I won't be a part of it, then.

[Court]: All right. You can, you know, you can sit quietly.

[Appellant]: Every juror you bring in here, I'm going to object in front of them.

[Court]: That's fine. You are not permitted to object because Mr. DeMatt is your attorney. He's the only one that's permitted to speak. If you start that, then you'll go downstairs.

[Appellant]: You might as well take me there now.

[Court]: Is that what you're requesting?

[Appellant]: No, I'm telling you I'm not going through ... with this loser representing me. Period. I made that clear.

\* \* \*

[Appellant]: I don't want to be part of this. You might as well take me downstairs, period.

[Court]: Mr. Faulk, you're to be present. If you can't behave yourself in the proper manner, then I'll take steps to take you downstairs.

[Appellant]: Well, that will happen. I'll assure you that.

[Court]: You're indicating to me that you do not want to be present during these proceedings?

[Appellant]: No, I don't. I don't want to be present during any of this, Your Honor, period.

\* \* \*

[Court]: Well, first of all, the record should be clear that [Appellant] applied for counsel. He has been provided counsel. He has actually been represented by Patricia Elliott, Brian Aston and now by Mr. DeMatt in these proceedings. This Court has made a determination that Mr. Faulk is not going to run these proceedings and he's not going to be in charge of the process of who represents him. Every one of the attorneys who have been appointed to represent [Appellant] are [sic] very, very capable criminal attorneys.... By being difficult, by creating difficulties with his various attorneys, [Appellant] is simply no longer going to control the agenda with regard to this matter....

[Appellant]: Are we just going to start calling the jurors in now?

[Court]: Yes.

[Appellant]: I would ask to be removed, then, Your Honor. At this point I want to be removed. I will not participate. I told you that. You go ahead and pick a jury. Proceed. You do it without me.

(Notes of Testimony Trial ("N.T."), 1/5/05, at 28–29, 31–34).

¶ 17 After Appellant thusly made so clear that he did not wish to be present at trial, the court attempted to engage him in a colloquy to explain the right he was waiving and the risks of not exercising that right. The court attempted to administer the oath to Appellant for purposes of the colloquy, but he refused to participate, responding "no" after being read the oath. (*Id.* at 37). The court and the prosecutor then made the following statements in Appellant's presence:

[Court]: If you [Appellant] refuse to go through a colloquy with the Court, the Court is simply going to make a statement upon the record here in your presence. Mr. Faulk, I want you to understand that you have the right to be present at all stages of the criminal proceedings against you, including jury selection and trial in this matter, and this Court is taking your indication that you don't want to be present as your voluntary waiver of your right to be present during all stages of criminal proceedings. Do you understand that? The record should reflect that the Court has not received any response, although it does appear that [Appellant] is within hearing distance of the Court and has previously appeared to hear the Court....

\* \* \*

[Prosecutor]: ... I just wanted to make sure [that Appellant is] aware that from time to time in the course of a trial, counsel confers with his client factually regarding the circumstances of the case. [Appellant] can volunteer things that he knows personally about certain witnesses. He can make contributions as to how—or make suggestions to counsel on how the case should proceed. Obviously, when he's not present in the courtroom, he can't do that. He should be aware [that] by absenting himself from the courtroom [ ] he's waiving any claims that he would have in that regard somewhere down the road.

(*Id.* at 37–39).

¶ 18 Immediately following these statements, to which Appellant did not respond, he was removed from the courtroom, and he was held in the holding cell downstairs from the courtroom throughout the proceedings. He had been told earlier that if he changed his mind and wished to return to the courtroom, he need only tell the deputy in charge of the holding cell and he could rejoin the proceedings. (*Id.* at 35). Furthermore, the trial court instructed Appellant's counsel to report to Appellant at each break in the proceedings all events that had taken place, even if Appellant did not want to listen. (*See id.* at 58; N.T., 1/6/05, at 63–64; N.T., 1/7/05, at 176–77).

¶ 19 Appellant now contends that the trial court's colloquy did not satisfy in all respects the mandate of our Supreme Court in *Vega.* Appellant acknowledges that the trial court's statement *did* inform him that he would be waiving the right to participate in jury selection, as required under *Vega.* (*See* Appellant's Brief at 10). Appellant also acknowledges that he was informed of his right to testify, albeit at a later point in the trial. (*See id.* at 12). However, Appellant contends that he was not informed of his right to confront and cross-examine witnesses, nor of the severe limitations that would of necessity attach to any subsequent ineffective assistance claim because of his failure to participate in the proceedings. (*See id.* at 11–12). Appellant's contention has no merit.

¶ 20 During the colloquy, the words used by the court and the prosecutor did not track precisely the language in *Vega.* However, our Supreme Court expressly declined to mandate any specific language or rote dialogue. *Vega, supra* at 262, 719 A.2d at 231. The necessary information was relayed to Appellant concerning the value of his participation in the proceedings, particularly with regard to his personal knowledge of the witnesses. Furthermore, he was warned that by refusing to be present to aid his counsel, he was waiving subsequent claims regarding counsel's decisions on how the case should proceed. The colloquy conducted by the court was of necessity a one-way discussion because, although Appellant was given every

opportunity to engage in the colloquy, he refused to participate or even to acknowledge the proceeding. The trial court was conscientious in protecting Appellant's rights, but it refused to allow Appellant's unreasonable behavior to delay further the selection of the jury and the beginning of his trial.[4] After review of the entire transcript, we conclude that the trial court acted properly in protecting Appellant's rights pursuant to *Vega*, while also preserving the decorum and authority of the court. Appellant's allegations to the contrary must fail.

■ ¶ 21 Appellant's next three issues are all challenges to the sufficiency of the evidence in support of his conviction for aggravated assault under Section 2702(a)(1). To obtain a conviction for aggravated assault, the Commonwealth must prove that the accused has "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1); *see also Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa.Super.2005) (explaining the elements of aggravated assault).

¶ 22 A challenge to the sufficiency of the evidence is a question of law and thus is subject to plenary review. *Commonwealth v. Brotherson*, 888 A.2d 901, 904 (Pa.Super.2005), *appeal denied*, 587 Pa. 719, 899 A.2d 1121 (2006). In reviewing a sufficiency challenge, we must determine whether the evidence at trial, and all reasonable inferences derived there-

from, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Stevenson*, 894 A.2d 759, 773 (Pa.Super.2006), *appeal denied*, 591 Pa. 691, 917 A.2d 846 (2007) (citations and quotation omitted).

■ ¶ 23 Appellant's first insufficiency claim is that the eyewitness to the assault, Mr. Kastelic, gave conflicting statements. Appellant contrasts Mr. Kastelic's testimony at trial with the testimony of other witnesses at trial as to what Mr. Kastelic had previously told them about the assault. The jury, not this Court, is charged with the responsibility of evaluating the credibility of the witnesses, and in doing so, the jury is free to believe all, part, or none of the evidence. *Id.* We will not disturb the jury's resolution of any conflict between the testimony of Mr. Kastelic and that of any other witnesses.

■ ¶ 24 Appellant's second and third insufficiency claims are that the Common-

---

4. The trial court placed on the record Appellant's repeated "effort[s] to be as difficult as he could be without being physical about it throughout these proceedings." (N.T., 1/5/05, at 41). Appellant's actions included refusing to be cooperative with the four trial counsel appointed to represent him, threatening a tri-

al judge, and sending disrespectful correspondence to the court. (*See id.* at 39–41). The trial court deemed it inappropriate—as do we—that Appellant should benefit from the belligerent and uncooperative manner that he exhibited throughout the proceedings.

wealth did not prove that Appellant acted with the requisite *mens rea* to induce serious bodily injury. Serious bodily injury is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To obtain a conviction for aggravated assault when the victim sustained serious bodily injury, the Commonwealth must establish that the offender acted intentionally, knowingly, or with a high degree of recklessness that included "an element of deliberation or conscious disregard of danger." *Commonwealth v. Roche,* 783 A.2d 766, 771 (Pa.Super.2001) (quoting *Commonwealth v. O'Hanlon,* 539 Pa. 478, 482, 653 A.2d 616, 618 (1995)); *see also Commonwealth v. Bruce,* 207 Pa.Super. 4, 916 A.2d 657, 661–65 (2007) (explaining the *mens rea* that must be proven for aggravated assault). At a minimum, the Commonwealth must prove that the offender acted with malice, consciously disregarding "an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Payne,* 868 A.2d 1257, 1261 (Pa.Super.2005), *appeal denied,* 583 Pa. 681, 877 A.2d 461 (2005) (citation omitted). In other words,

> [a] defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Bruce, supra* at 664 (citation omitted).

■ ¶ 25 This Court has previously acknowledged that intent can be difficult to prove directly because it is a "subjective frame of mind." *Commonwealth v. Lewis,* 911 A.2d 558, 564 (Pa.Super.2006) (citation omitted). However, the fact-finder is free to conclude that "the accused intended the natural and probable consequences of his actions to result therefrom." *Id.* (citation omitted).

> We must look to all the evidence to establish intent, including, but not limited to, [the] appellant's conduct as it appeared to his eyes. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Id.* (citation omitted).

■ ¶ 26 Each case must be evaluated on its own particular facts, but under appropriate circumstances, even a single punch to the face can constitute aggravated assault. *Id.; see Commonwealth v. Davis,* 267 Pa.Super. 370, 406 A.2d 1087, 1089 (1979) (taking into account the appellant's overall conduct, as well as the serious injury inflicted, to conclude that the appellant's single punch to the victim's face revealed extreme disregard of the value of human life and thus supported a conviction for aggravated assault). *But see Commonwealth v. Alexander,* 477 Pa. 190, 194–95, 383 A.2d 887, 889–90 (1978) (concluding that the circumstances of the case did not permit a finding of the requisite intent for aggravated assault because the appellant merely struck the victim once in the face with a closed fist, breaking his nose); *Roche, supra* at 770–72 (concluding that the appellant's belligerent words and throwing of one punch were insufficient to establish the requisite *mens rea* for aggravated assault, even though the victim suffered serious bodily injury, but noting that the appellant had ceased his attack immediately and did not continue to strike the victim).

¶ 27 Our decisional law also includes cases of aggravated assault in which the assailant landed multiple punches on the

victim. For example in *Lewis, supra,* the appellant punched the victim's face and stomach multiple times, resulting in life-threatening injuries and a lengthy recovery. This Court concluded that the evidence was sufficient to support the appellant's conviction for aggravated assault, noting that the appellant continued to strike the victim after she was rendered dazed and helpless from the first few punches and ceased his assault only when he became aware of the approach of police. *Lewis, supra* at 564–65. Indeed, this Court has expressly held that intent to cause serious bodily injury can be established by evidence showing that an appellant intended to strike again a victim already rendered dazed and helpless by the initial blows. *See Bruce, supra* at 663 (citation omitted).

¶ 28 In the instant case, the evidence supported the findings that Appellant entered a home where the victim was seated in a chair and proceeded to punch him numerous times in the head until his face was bloody and swollen, and he was barely conscious. Appellant is a large man, and the evidence indicated that he repeatedly struck the victim very hard with a closed fist. Mr. Kastelic testified that when he reentered his living room and observed the ongoing assault, the victim already appeared to be unconscious, but Appellant continued to punch him five or six more times. (N.T., 1/6/05, at 95). Appellant ceased his assault on the victim only when Mr. Kastelic asked Appellant what was going on. Appellant made no attempt to aid the victim in any way, but simply left the premises immediately after the assault.

¶ 29 The victim's treating physician testified that it would have taken "substantial force" to cause the fractures that the victim sustained. (N.T., 1/7/05, at 190). Indeed, the victim was so severely injured that he required hospitalization in the intensive care unit followed by intensive and lengthy rehabilitation. The victim was unable to speak, to walk, or to eat without aid of a feeding tube. He required occupational, speech, and physical therapy. He remained confused, and he experienced post-traumatic amnesia, *e.g.,* he was unable to remember the assault. According to the victim's treating physician, the injuries were consistent with a "significant traumatic brain injury" and were sufficiently serious as to have been life-threatening had he not obtained treatment. (*Id.* at 196–97).

¶ 30 Based on all the circumstances surrounding this assault, we have no difficulty concluding that the evidence was sufficient to establish that Appellant acted with the requisite degree of malice, consciously disregarding "an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Payne, supra* at 1261. This is **not** a case in which drawing the line between aggravated and simple assault is difficult or subject to reasonable disagreement. Appellant continued to strike the victim's head, repeatedly and brutally, even after the victim had been rendered helpless. The blows were so severe as to induce traumatic brain injury and to cause the victim's face to look "like mush." (N.T., 1/6/05, at 96). Appellant's insistence that he could not have anticipated that his actions could cause death or serious bodily injury is entirely untenable.

¶ 31 In Appellant's final issue, he contends that the trial court erred in sentencing him to the statutory maximum. Appellant's challenge is to the discretionary aspects of his sentence, from which there is no appeal as of right. *Commonwealth v. Raybuck,* 915 A.2d 125, 127 (Pa.Super.2006).

¶ 32 To be reviewed on the merits, a challenge to the discretionary aspects of sentence must raise a substantial question that the sentence imposed is

not appropriate. A substantial question is raised when the appellant advances a "colorable argument" that the sentence was either "inconsistent with a specific provision of the Sentencing Code" or "contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). This Court determines whether an appellant has raised a substantial question by examination of the appellant's concise statement of the reasons relied upon for allowance of appeal, which must be included in the appellant's brief, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). *Commonwealth v. Shugars,* 895 A.2d 1270, 1273–74 (Pa.Super.2006). If a Rule 2119(f) statement is not included in the appellant's brief and the appellee objects to the omission, then this Court is precluded from reviewing the merits of the appellant's claim. *Raybuck, supra* at 127–28 n. 3; *Shugars, supra* at 1274 n. 6.

¶ 33 Appellant has not included a Rule 2119(f) statement in his brief, and the Commonwealth has objected to this deficiency. Therefore, we may not reach the merits of Appellant's claim.[5]

¶ 34 In summary, we conclude that Appellant's first four issues lack any merit and his final issue has been waived. Therefore, we affirm his judgment of sentence.

¶ 35 Judgment of sentence affirmed. Motion to proceed *pro se* denied.

---

5. We also note that Appellant fails to develop any argument as to his sentencing challenge. Appellant merely asserts that his sentence was unreasonable because he had no prior felony convictions and he did not use a weapon in the assault and because the dispute involved two adults. Appellant provides no insight into why any or all of these factors render unreasonable the sentence imposed, and he cites no decisional law relevant to these factors. Therefore, Appellant's sentencing claim has been waived. *Commonwealth v. Price,* 876 A.2d 988, 996 (Pa.Super.2005), *appeal denied,* 587 Pa. 706, 897 A.2d 1184 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 224, 166 L.Ed.2d 179 (2006) (holding that failure to develop a claim with appropriate discussion, argument, and citation to relevant authority results in waiver of the claim).