J-S11011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORY JACKSON | : | |
| | : | |
| Appellant | : | No. 1611 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 6, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008863-2019

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:                                 **FILED JUNE 07, 2023**

Appellant, Cory Jackson, appeals from the judgment of sentence

entered on May 6, 2022, as made final by the denial of Appellant's

post-sentence motion on May 20, 2022. We affirm.

The trial court ably summarized the underlying facts of this case:

> At trial, the Commonwealth presented the testimony of [D.W.
> (hereinafter "the Complainant"), E.P., and K.B.]. Viewed in
> the light most favorable to the Commonwealth as the verdict
> winner, the evidence established the following.
>
> During the summer of 2019, [Appellant] lived a block away
> from the house of [the Complainant]. Prior to August of that
> year, [the Complainant] barely knew [Appellant's] first name
> and considered him to be a mere acquaintance from the
> neighborhood. However, [the Complainant] eventually came
> to have interactions with [Appellant] that left her feeling
> increasingly uncomfortable.
>
> During one evening in August [] 2019 at approximately 10:00
> p.m., [Appellant] came up onto the front porch of [the
> Complainant's] house and rang the doorbell. After [the

Complainant] answered the door, [Appellant] told her he needed a place to sleep and asked if he could come in and sleep on her couch. Shocked and confused, [the Complainant], who was home alone at the time, responded that [Appellant] could not come inside. She told him that he should go home and then shut the door. Later that month, [Appellant] came up onto [the Complainant's] porch again and told her that he saw someone on her porch and had scared them away. [The Complainant] felt uncomfortable with [Appellant] on her porch, where he could look directly through windows into the home's living room. On other occasions while riding his bicycle, [Appellant] again relayed to [the Complainant] that he saw someone on her porch. During these encounters, [the Complainant] told [Appellant] at least twice that he was not allowed to be on her porch.

By October of 2019, [the Complainant's] roommate, [E.P], had returned to their home after having been away for the summer. On October 2, 2019, at about 10:00 or 10:30 p.m., [E.P.] rode her bicycle home and noticed [Appellant] walking slowly down the block. As [E.P.] walked up to the home's front door, [Appellant] came up to the doorstep and started a conversation with [E.P.], which lasted for about 10 minutes. Eventually, [E.P.] stated that she was sweaty from the gym and needed to go inside. [Appellant] then began making comments about "air drying when you take a shower" and about being nude. [E.P.] told [Appellant] she was feeling a little uncomfortable and was going to go inside. After entering the home, [E.P.] sent a text message to [the Complainant] regarding her interaction with [Appellant].

Later that same night, at approximately 2:00 a.m., [the Complainant] was in her second-floor bedroom with the light on when she heard what sounded like something being thrown at her window. Startled, she went downstairs and looked out her kitchen window into an outside area directly below her bedroom window. There, she saw [Appellant] throwing rocks at her window. Already upset from [E.P.'s] earlier text message about [Appellant's] comments to [E.P.], [the Complainant] began yelling at [Appellant]. She yelled that [Appellant] should not be throwing rocks at their window or be on their porch, and that he needed to go away and leave them alone. [Appellant] backed away and began walking down the street.

- 2 -

[The Complainant] then checked to make sure all the house's doors and windows were locked. After realizing that she had left her cellphone in her car, she went upstairs to wake up [E.P.] so that she could use [E.P.'s] cellphone. When [the Complainant] went back downstairs, she noticed her cat looking out onto the porch through the front window. [The Complainant] looked through the same window and saw [Appellant] outside. She went to the front door, looked through its peephole, and saw [Appellant] walk up the steps to the door. [The Complainant] then observed the door handle jiggling for a few seconds as [Appellant] tried to open the front door. After his unsuccessful attempt to open the door, [Appellant] walked back down the steps and across the street into a well-lit area. [The Complainant] saw his head poking out from behind a car across the street, and then [Appellant] came out from behind the car while masturbating with his penis in his hand. He continued to masturbate as he walked back towards [the Complainant's] home and then stood at the side of her house. He pulled his pants down to his ankles and masturbated for five more minutes while looking at the house. [The Complainant] called 911.

Multiple police cars eventually arrived in response to [the Complainant's] 911 call, but [Appellant] had already [run away] by that point. The police circled the block a few times before leaving. After the police left, [the Complainant] began hearing more rocks being thrown at her bedroom window. She then went back downstairs and saw [Appellant] throwing rocks again. She called the police a second time, but before another police car arrived, [Appellant] had left again. While police officers were still at the house, [Appellant] walked back up the street. One of the officers then pursued and arrested him.

At trial, the Commonwealth also presented evidence of prior bad acts pursuant to Pennsylvania Rule of Evidence 404(b) through the testimony of [K.B.]. The evidence established the following.

In June [] 2018, after being dropped off near her home at night, [K.B.] saw [Appellant] walking down the street. [Appellant] began yelling things at her. When [K.B.] continued walking towards her home, [Appellant] turned and

began following her. [K.B.] then ran to her house, opened the door, and got inside. As soon as [K.B.] shut the door, [Appellant] was on the other side of the door, turning the door handle and trying to get inside. He then went over to the living room window and began banging on it and looking into the house. A few moments later, [K.B.'s] roommate and her roommate's boyfriend arrived at the home. [Appellant] moved away from the house as they approached. [K.B.] then opened the door to let them in. While [K.B.] was standing in the doorway, [Appellant] ran up, slapped [K.B.'s] buttocks, and then grabbed her buttocks before running away. On June 25, 2019, [Appellant] pled guilty to charges of indecent assault and harassment for the incident involving [K.B.].[fn.1]

> [fn.1] At trial, the parties also stipulated that [Appellant] has a prior conviction for stalking from 2014, which was also introduced by the Commonwealth pursuant to Pennsylvania Rule of Evidence 404(b).

Trial Court Opinion, 9/2/22, at 2-5 (citations omitted).

Following a bench trial, the trial court found Appellant guilty of attempted burglary and indecent exposure and, on May 6, 2022, the trial court sentenced Appellant to serve 42 to 84 months in prison, followed by five years of probation, for his attempted burglary conviction and to serve a concurrent term of nine to 18 months in prison for his indecent exposure conviction. After the trial court denied Appellant's post-sentence motion, Appellant filed a timely notice of appeal. Appellant raises two claims on this appeal:

> 1. Does the trial record contain sufficient evidence for the conviction of attempted burglary?
>
> 2. Was the sentence of 42-84 [months'] incarceration plus five years of probation an abuse of the sentencing court's discretion?

Appellant's Brief at 4 (some capitalization omitted).

- 4 -

Appellant first claims that the evidence was insufficient to support his attempted burglary conviction. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

As is relevant to the case at bar, the offense of burglary is defined in the following manner:

> (a) Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
>> (1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the

- 5 -

time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

. . .

(e) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Bodily injury crime." As follows:

(1) An act, attempt or threat to commit an act which would constitute a misdemeanor or felony under the following:

. . .

Chapter 31 (relating to sexual offenses).

. . .

18 Pa.C.S.A. § 3502 (effective from January 3, 2017 to September 8, 2022).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

On appeal, Appellant claims that the evidence was insufficient to support his attempted burglary conviction because, "[f]rom the evidence in the record[,] it cannot be established beyond a reasonable doubt that [Appellant] intended to enter the home." Appellant's Brief at 6. Instead, Appellant argues, the evidence merely established that Appellant was "trying to get the attention of [the Complainant] to get her to come to the window or the door." *Id.* at 6-7. Appellant's claim fails.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was clearly sufficient to prove that Appellant intended to enter the Complainant's home. Certainly, the evidence established that, at approximately 2:00 a.m. on October 2, 2019, Appellant was throwing rocks at the Complainant's bedroom window. The Complainant testified that, in response, she angrily "yelled at [Appellant] and said this needs to stop, you shouldn't be throwing rocks at our window, you shouldn't be on our porch. You need to go away. Leave us alone, hop off." N.T. Trial, 3/4/22, at 34. The Complainant testified that Appellant then "backed away into the street." *Id.* at 35. However, as the Complainant testified, after she woke her roommate, she saw Appellant "walk up the steps [of their house and] . . . tr[ied] to open the door." *Id.* Specifically, the Complainant testified, Appellant "walk[ed] up the steps onto [the Complainant's porch and] jiggle[d the] door handle [for] . . . two seconds" in an attempt "to open the door." *Id.* at 51.

Within Appellant's brief to this Court, Appellant claims that his actions constituted a mere attempt "to get the attention of [the Complainant]" – and not an attempt to enter the home. Appellant's Brief at 6-7. Appellant's argument is contingent upon this Court viewing the evidence in a light most favorable to him. This we will not do. Rather, as explained above, our standard of review requires that we view the evidence "in the light most favorable to the Commonwealth, as the verdict winner, and [] draw all reasonable inferences in favor of the Commonwealth." *Commonwealth v.*

**Brown**, 52 A.3d 1139, 1164 (Pa. 2012) (quotation marks and citations omitted).

Viewed in the proper light, the evidence does not support Appellant's self-serving version of the events. Instead, and consistent with the express testimony of the Complainant, the evidence establishes that, when Appellant "jiggle[d the Complainant's] door handle [for] . . . two seconds," Appellant was "try[ing] to open the door" to the Complainant's home. Indeed, had the Complainant's door been unlocked, Appellant would have gained entry to the Complainant's house. Appellant's first claim on appeal thus fails.

Next, Appellant claims that the trial court abused its discretion at sentencing. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." **Commonwealth v. Ritchey**, 779 A.2d 1183, 1185 (Pa. Super. 2001). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. **See** 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. **Id.**

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not

- 8 -

appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007).

On appeal, Appellant claims that the trial court abused its discretion when it imposed his sentence for attempted burglary, as the term of 42 to 84 months in prison was "at the very top of the aggravated range [and] does not take any mitigating facts into account." Appellant's Brief at 8. Appellant has waived his discretionary aspects of sentencing claim because he failed to include a Pennsylvania Rule of Appellate Procedure 2119(f) statement in his brief and the Commonwealth objected to the omission. Commonwealth's Brief at 11–12; ***Commonwealth v. Faulk***, 928 A.2d 1061, 1071–1072 (Pa. Super. 2007) ("[t]o be reviewed on the merits, a challenge to the discretionary aspects of sentence must raise a substantial question that the sentence imposed is not appropriate. A substantial question is raised when the appellant advances a colorable argument that the sentence was either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. This Court determines whether an appellant has raised a substantial question by examination of the appellant's concise statement of the reasons relied upon for allowance of appeal, which must be included in the appellant's brief, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). If a Rule 2119(f) statement is not included in the appellant's brief and the appellee objects to the omission, then this Court is precluded from reviewing the merits of the appellant's claim") (citations and quotation marks omitted).

Further, even if Appellant had not waived his discretionary aspects of sentencing claim, the claim would fail on the merits. Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993); *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*). Appellant contends that his sentence is excessive because the trial court failed to consider certain mitigating factors at sentencing, including: "Appellant was high on PCP when he committed this crime;" Appellant took responsibility for his crimes; Appellant completed a four-month drug program while he awaited trial in this case; while in prison awaiting trial, Appellant "witnessed multiple stabbings and heard a man being raped in his cell;" and, due to COVID, "Appellant had already served over two years in state prison for previous convictions while he was waiting for the present matter to be tried." Appellant's Brief at 8.

This Court has held that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (citations omitted), *citing Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014); *see also Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (same). Nevertheless, Appellant's claim fails because, during the sentencing hearing, the trial court

- 10 -

demonstrated it was well aware of – and thoroughly considered – the mitigating factors in Appellant's case. As the trial court explained during sentencing:

> In determining what I believe to be an appropriate sentence, I've considered all of the evidence presented during the history of this case, including the evidence adduced during the trial of this case, over which I presided. I've considered the information in the presentence investigation report, the investigation of prior record score, and the mental health evaluation, all of which I've carefully reviewed. I've also considered the information presented today during the sentencing hearing, including the statements made by counsel, as well as [Appellant's] allocution, and I've considered the Pennsylvania Sentencing Guidelines, which I've already calculated and put on the record there was an agreement on.
>
> I'll just note again, the guidelines for the attempted burglary are a recommendation of a minimum of 18 to 30 months, plus or minus 12 months, and indecent exposure, restorative sanctions 6 months, plus or minus 3 months.
>
> I've also considered the statutory factors that I'm required to consider by law. I've considered the need for protection of the public. And in looking at [Appellant's] conduct in this case, as well as [Appellant's] history, I do think that there is a substantial need to protect the public in this case, because [Appellant] has engaged not in just one criminal incident, but in a pattern of conduct over a period of years. Despite repeated arrests, convictions and sentences, he has continued to engage in this conduct. And I agree with the Commonwealth's view that [Appellant] has not demonstrated a full acceptance of responsibility for his conduct, rather, blaming, in this case, a feeling of being disinhibited by his use of PCP.
>
> While I don't doubt that his drug abuse has only exacerbated his decision-making and conduct in various instances in his life, the fact is that this is not an isolated type of behavior. This has happened again and again.

- 11 -

In this particular case over which I presided at trial, the facts demonstrated that [Appellant] went very late at night, around [2:00] a.m., to the victim's house, throwing rocks at the window. She yelled at him to leave, and even though she told [Appellant] multiple times in the past that he was not allowed on her porch, he came back onto her porch and tried to open the door. When unsuccessful, he eventually started masturbating under a light outside -- in public, outside of the victim's house and continued to do so for five minutes. He ran away when police arrived, and then came back and threw rocks at the bedroom window again, and then was finally arrested after the victim called the police again.

It's concerning to me that this, again, appears to be a pattern of conduct. In fact, the testimony at trial from witness [K.B.] demonstrated that in June of 2018, [Appellant] tried to open the doorknob to her house and banged on her window and also grabbed her -- what she described as grabbed her butt and then ran away.

I also find it concerning that on June [24,] 2019, [Appellant] pled guilty in five separate cases, all of which involved crimes of indecent assault. Sentencing was scheduled for December of that year, and while awaiting sentencing, he committed the offenses in this case on October [2,] 2019, and then was sentenced on December [30,] 2019.

So, despite having been arrested and pleading guilty for all the different cases, he then committed the crime in this case, and that shows, in my mind, reflects a serious concern that [Appellant] presents a higher risk of recidivism than similarly-situated defendants, which is an aggravating factor. I think his prior record score understates the seriousness of his criminal history. I think he presents a danger to society, and I think he has not fully accepted responsibility in a manner that would indicate he is less likely to commit this kind of activity in the future.

I think a sentence in the aggravated range is appropriate here, because of the gravity of the offense, attempted burglary, his conduct and his pattern of conduct over these years.

> And for all these reasons, I am going to sentence [Appellant] to a sentence in the aggravate[d] range on attempted burglary.

N.T. Sentencing, 5/6/22, at 20-24.

Therefore, since the trial court did, in fact, consider the mitigating factors in Appellant's case, Appellant's discretionary aspects of sentencing claim fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 6/7/2023*