J-S47020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARREN LYNN SCOTT | : | |
| | : | |
| Appellant | : | No. 3202 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 16, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003871-2020

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM PER CURIAM: **FILED JANUARY 24, 2024**

Darren Scott appeals from the judgment of sentence entered following his conviction for harassment. **See** 18 Pa.C.S.A. § 2709(a)(1). We affirm.

This case began on June 7, 2020, in the kitchen of Mr. Scott's house. Gennivea Ware was speaking loudly with Mr. Scott's wife, Precious Scott; Mr. Scott struck Ms. Ware in the face. Police responded and charged Mr. Scott with simple assault and harassment. The charges were held for court.

Mr. Scott's case remained pending for over two years. Mr. Scott failed to appear at several status conferences, providing different reasons through counsel. **See, e.g.**, N.T., 1/6/21, at 3 (self-quarantine); N.T., 1/26/21, at 3 (unknown); N.T., 4/19/21, at 3–4 (no transportation); N.T., 8/20/21, at 3–4 (health issues); N.T., 10/25/21, at 3 (unknown); N.T., 1/7/22, at 3 (surgery);

_____

[*] Former Justice specially assigned to the Superior Court.

N.T., 1/18/22 (Covid test); N.T., 2/8/22, at 6–7 (delayed for a doctor appointment).

When Mr. Scott was present, the trial court noted his behavior as argumentative and disruptive. Trial Court Opinion, 5/23/23, at 2; *see, e.g.*, N.T., 5/24/21, at 4; N.T., 2/8/22, at 14–20; N.T., 7/14/22, at 21–36. Mr. Scott's first attorney moved to withdraw on July 22, 2021, citing an irreconcilable breakdown in communication. The trial court heard the motion on September 13, 2021, granted it, and appointed new counsel. On November 4, 2021, the trial court appointed a third attorney to represent Mr. Scott.

At a status conference on July 14, 2022, Mr. Scott addressed the trial court regarding previously litigated motions. N.T., 7/14/22, at 21–36. At the end of the proceeding, Mr. Scott indicated dissatisfaction with the work of his appointed counsel. *Id.* at 49–51. He then stated his desire to represent himself, which the trial court implicitly denied at the end of the proceeding:

> MR. SCOTT: Me and [defense counsel] has -- this is the conversations. Last night we talked for an hour. To this date right now, just me and you speaking, [defense counsel] has never asked me what happened or tried to let me be involved in my defense. He has not asked me what happened yet. I told him last night three times, I said, you didn't even ask me what happened yet. So how is going to represent me and he don't even know what happened? He don't even know my side of the story. How's he going to do that, Your Honor, on record -- while we on record? He never asked me what happened. Not once.
>
> [Defense counsel]: Your Honor, Defense will be prepared for July 19th.
>
> THE COURT: Thank you.
>
> MR. SCOTT: So...

THE COURT: July...

[Defense counsel]: 19th, I thought, right?

THE COURT: Huh?

MR. GOLD: Yeah, July 19th.

MR. SCOTT: Your Honor, you didn't answer me.

THE COURT: Yes, that is correct. I didn't hear you correctly at first. I thought you said the 9th, that's why I paused. Yeah. Thank you.

MR. SCOTT: Okay. I do want to represent myself, Your Honor. Whatever's going on. I do.

THE COURT: [Defense counsel], you're still the attorney of record.

*Id.* at 50–52.

On July 19, 2022, Mr. Scott and counsel appeared. Mr. Scott continued to complain about the adequacy of his representation but did not indicate on the record that he wished to represent himself. *See* N.T., 7/19/22, at 10–11.

On October 24, 2022, the day before jury selection, Mr. Scott spoke to the trial court, complaining that his attorney had not interviewed witnesses or asked him what happened. N.T., 10/24/22, at 5–6. Defense counsel stated that Mr. Scott had hung up when he tried to call him. *Id.* at 7. After a long discussion about Mr. Scott's complaint, Mr. Scott said he did not want to go to trial with his attorney. *Id.* at 18–19. He did not move to represent himself in court at this time. *Id.*

The morning of October 25, 2022, defense counsel stated that Mr. Scott told him after the previous proceeding that he wanted to represent himself. N.T., 10/25/22, at 3–4. According to defense counsel, Mr. Scott was already

on the bus from the courthouse by that time. *Id.* The trial court inquired of

Mr. Scott:

THE COURT: Well, the trial is scheduled for today at two o'clock, okay, to pick a jury. All right. And we will continue until a verdict is reached later this week. So, Mr. Scott, you understand the trial's going forward?

MR. SCOTT: Yes.

THE COURT: All right. And you're telling me you wish to represent yourself?

MR. SCOTT: Yes.

THE COURT: Have you ever represented yourself before?

MR. SCOTT: Yes.

THE COURT: When?

MR. SCOTT: A couple years ago in front of Judge Bradley I believe.

THE COURT: And what was the result in that case?

MR. SCOTT: Not guilty, a jury trial.

THE COURT: You represented yourself in a jury trial and you were acquitted?

MR. SCOTT: Yes, he . . . appointed Guy Smith as standby counsel.

. . .

THE COURT: Okay. And you're telling me you were acquitted in that case?

MR. SCOTT: Yes, it was in the newspaper.

THE COURT: Found not guilty?

MR. SCOTT: It was in the newspaper.

THE COURT: Well, I understand but you know I don't --

MR. SCOTT: In this day and age you Google things.

THE COURT: -- have a photographic memory.

MR. SCOTT: Right. But in this day and age you Google.

THE COURT: I don't know if I read it.

MR. SCOTT: You can Google my name and it will pop up.

THE COURT: Okay, all right. We're on the eve of trial. I'm not going to allow Mr. Scott to represent himself. Based on my observation of him throughout this case I don't believe he's capable of representing himself.

N.T., 10/25/22, at 5–7.

Mr. Scott continued to assert his right to represent himself, complaining about his attorney's lack of preparation. The trial court continued to refuse Mr. Scott's request. Despite receiving notice in open court, Mr. Scott did not appear for jury selection that afternoon.

Trial occurred on October 26, 2022. Mr. Scott again failed to appear, despite being told when trial would occur. At trial, Ms. Ware testified that when she was in Mr. Scott's kitchen on June 7, 2020, "[h]e came up and snuffed me and hit me." N.T., 10/26/22, at 41. Ms. Ware explained that Mr. Scott forcibly hit her in the face with a closed fist. *Id.* at 43.

Janet Purnell, who had also been in the kitchen, explained that Mr. Scott had told Ms. Ware to lower her voice. *Id.* at 59. Ms. Purnell testified that when Ms. Ware was talking to Ms. Scott, Mr. Scott "came into the kitchen and said to [Ms. Ware, ']why is you in my wife's face[?']  And then all of a sudden he just punched her." *Id.* at 60.

The jury acquitted Mr. Scott of simple assault, but the trial court found Mr. Scott guilty of harassment. On November 16, 2022, the trial court sentenced Mr. Scott to 30 days in jail, 60 days of probation, and an anger

- 5 -

management program. Mr. Scott timely appealed. New counsel was appointed for appeal. Mr. Scott and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Mr. Scott presents three issues in this appeal:

1. Whether the trial court erred as a matter of law in denying [Mr. Scott's] request to proceed *pro se*, where the request was timely and unequivocal, without conducting a colloquy as required by Pa.R.Crim.P. 121 and applicable appellate caselaw.

2. Whether [Mr. Scott] was denied his right under the Sixth Amendment to the United States Constitution and Article 1 Section 9 of the Pennsylvania Constitution, as a result of the trial court's denial of [Mr. Scott's] request to represent himself at trial.

3. Whether the conviction of the summary offense of Harassment was based on insufficient evidence, where evidence introduced at trial failed to prove beyond a reasonable doubt that [Mr. Scott] acted with intent to harass, annoy or alarm.

Scott's Brief at 4.

Mr. Scott's first two issues concern the trial court's denial of his oral motion to represent himself the day of jury selection. He argues that the trial court violated the rules of criminal procedure by denying his timely motion without conducting a full colloquy. Further, Mr. Scott argues that the trial court violated his constitutional rights by denying his request to proceed *pro se*, which he asserts was knowing, intelligent, and voluntary.

Under the United States and Pennsylvania Constitutions, a criminal defendant has "an affirmative right of self-representation." *Faretta v. California*, 422 U.S. 806, 813–17 (1975); *see* U.S. Const. Amend. VI; Pa. Const. Art. I § 9. To validly waive the right to counsel, a defendant must

make a timely, unequivocal request. ***Commonwealth v. El***, 977 A.2d 1158, 1163 (Pa. 2009).

By rule, a trial court must inquire into six areas before finding that a defendant's request to proceed *pro se* is valid:

**(A) Generally.**

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

(3) The judge or issuing authority may permit the attorney for the Commonwealth or defendant's attorney to conduct the examination of the defendant pursuant to paragraph (A)(2). The judge or issuing authority shall be present during this examination.

. . .

**(C) Proceedings Before a Judge.** When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

Pa.R.Crim.P. 121. The trial court must conduct a colloquy under this rule before granting a defendant's request to waive counsel. *Commonwealth v. Phillips*, 93 A.3d 847, 853–54 (Pa. Super. 2014).

However, as the trial court found in this case, a criminal defendant may forfeit the right to self-representation despite making an otherwise valid, timely request to proceed *pro se*. *Commonwealth v. Green*, 149 A.3d 43, 58–59 (Pa. Super. 2016) (citing *Commonwealth v. Africa*, 353 A.2d 855, 864 (Pa. 1976)); *see* Trial Court Opinion, 5/23/23, at 4. The Supreme Court of Pennsylvania has explained:

"The right to self-representation . . . is not absolute." *Commonwealth v. Brooks*, 104 A.3d 466, 474 (Pa. 2014). In *Faretta*, the High Court recognized that a defendant may forfeit his right to self-representation. *Faretta*, 422 U.S. at 834 n.46 (trial court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct[;] ... self-representation is not a license to abuse the dignity of the courtroom" or to fail to "comply with relevant rules of procedural and substantive law"). The California Supreme Court, for example, has held *Faretta* does not limit the "serious and obstructionist misconduct" potentially supporting a finding of forfeiture, to behavior occurring in the courtroom. *See, e.g.*, *People v. Carson*, 104 P.3d 837, 840 (Cal. 2005), citing *Faretta*, 422 U.S. at 834 n.46. We find this approach persuasive. Although

trial may be the central event in a criminal prosecution, we recognize it is the culmination of many weeks or months of preparation and related proceedings, not all of which take place in the courtroom; accordingly, misbehavior affecting the right to self-representation is not restricted to the courtroom and the "relevant rules of procedure and substantive law" are not limited to those occurring only in the trial itself. *Id.* at 841, quoting *Faretta*, 422 U.S. at 834 n.46. Ultimately, it is the effect and not the location of the misconduct and its impact on the core integrity of the trial that will determine whether forfeiture is warranted. *Id.*

*Commonwealth v. Tighe*, 224 A.3d 1268, 1280 (Pa. 2020) (plurality) (citation format altered).

For example, this Court affirmed the denial of a defendant's motion to proceed *pro se* "based upon his utter disregard for the authority of the court and its processes." *Green*, 149 A.3d at 59. In *Green*, the defendant interrupted and argued with the trial court, disregarded the court's warnings, and made derogatory comments to the judge and counsel. *Id.* Furthermore, the defendant continued his disruptive behavior after trial began with counsel present. *Id.* We therefore concluded that the defendant had effectively waived his right to represent himself. *Id.* at 60.

Here, Mr. Scott's attempts to distinguish *Green* fail. The trial court observed Mr. Scott over two years of pretrial proceedings in this case. When Mr. Scott appeared for the scheduled events, he repeatedly interrupted the trial court and argued about previously addressed issues. As trial approached, Mr. Scott moved to proceed without counsel. When the trial court denied the motion, Mr. Scott repeatedly complained about his attorney.[1] As in *Green*,

_____

[1] As the trial court attempted to explain to Mr. Scott, the quality of a lawyer is a different issue from the validity of a decision to proceed without a lawyer.

- 9 -

Mr. Scott's actions and arguments over the history of the case reflected a disregard for the authority of the court and the effect of its rulings. And as in **Green**, the court's concerns were well-founded; Mr. Scott did not appear for jury selection or trial.[2] Based on this record, the trial court could properly determine that Mr. Scott forfeited his right to self-representation. Therefore, Mr. Scott's first two issues fail.

Mr. Scott's third issue is a challenge to the sufficiency of the evidence to convict him of harassment under Section 2709(a)(1) of the Crimes Code. He argues that the Commonwealth could not prove his specific intent to harass, annoy, or alarm, as the statute requires:

> **(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

18 Pa.C.S.A. § 2709(a)(1).

Mr. Scott contends that the testimony from Ms. Ware and Ms. Purnell did not show that he intended to harass, annoy, or alarm Ms. Ware when he hit her. Rather, as Ms. Ware was speaking rudely (and loudly) to Ms. Scott, Mr. Scott submits that his intent was to defuse the situation and aid his wife.

This Court reviews a challenge to the sufficiency of the evidence *de novo*. **Commonwealth v. Coniker**, 290 A.3d 725, 733 (Pa. Super. 2023)

---

[2] Additionally, after Mr. Scott was arrested on a bench warrant and sentenced, he sent the trial court a letter attacking its handling of his case.

- 10 -

(citations omitted). Our inquiry is whether, viewing all evidence from trial in the light most favorable to the Commonwealth as verdict winner, including reasonable inferences, the evidence establishes each element of the crime. *Id.* at 733–34. Like any element of a crime, the specific intent to harass, annoy, or alarm "may be inferred from the totality of the circumstances." *Id.* at 734 (quoting *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013)). With regard to specific intent, "the fact-finder is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom." *Commonwealth v. Faulk*, 928 A.2d 1061, 1070 (Pa. Super. 2007) (quotation omitted).

Here, although it is plausible that Mr. Scott's intent was benign, the trial court was free to conclude that Mr. Scott intended the natural, probable consequence of striking Ms. Ware. *Id.* It is reasonable to infer that a person being suddenly hit in the face would feel harassed, annoyed, or alarmed. Because we view evidence in a light most favorable to the Commonwealth as the verdict winner on this count, we conclude that the evidence was sufficient to sustain Mr. Scott's conviction for harassment. *Coniker*, *supra*. This issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/24/2024